(No. 13460.—Judgment reversed; finding of Industrial Commission confirmed.)

THE VULCAN DETINNING COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHANNA OPREMCHAK, Plaintiff in Error.)

*Opinion filed October 23, 1920—Rehearing denied Dec. 14, 1920.*

1. STATUTES—*statute will not be given retrospective effect unless so intended.* A retrospective effect will not be given a statute unless it clearly appears that such was the intention of the legislature, and under section 4 of the act on construction of statutes an act revising another shall not apply retrospectively to pending claims or actions unless such application is manifestly intended.

2. WORKMEN'S COMPENSATION—*Supreme Court has jurisdiction to review cause certified by circuit court before amendment of 1919.* Where the circuit court sets aside the award of the Industrial Commission and enters an order certifying the cause as one proper to be reviewed by the Supreme Court before the amendment of 1919 has taken effect, the Supreme Court has jurisdiction to review the case on a writ of error prosecuted after the amendment without a direct application therefor.   (Contrary expression in *City of Chicago* v. *Industrial Com.* 292 Ill. 409, overruled.)

3. SAME—*that injury arose out of employment may be proved by circumstantial evidence.* The burden is upon the claimant to show by competent testimony not only the fact of the injury but that it occurred in the course of and arose out of the employment, but such proof may be established by circumstantial evidence from which an inference can logically be drawn.

4. SAME—*when the arbitrator is justified in drawing inference from circumstantial evidence.* Where there is no direct proof as to how an employee met his death, which occurred in the course

of his employment, the circumstantial evidence must be such as to induce a reasonable man to draw an inference without merely guessing at the fact; but where there is ground for comparing the probabilities, and the more probable conclusion·is that for which the applicant contends, the arbitrator is justified in drawing such inference.

5. SAME—*when decision of the commission must be sustained.* Courts cannot weigh the evidence in compensation cases, and in the absence of fraud they are bound by the decision of the Industrial Commission if there is any legal evidence to support it.

6. SAME—*when refusal to allow autopsy is not an admission as to cause of death.* Where there is no direct evidence as to how an employee met his death, the refusal of the widow, who is the applicant for compensation, to allow an autopsy after burial, at the request of a representative of the insurance company, should not be treated as an admission or a legal presumption, one way or the other, as to the cause of the death.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

ROBERT E. LARKIN, for plaintiff in error.

FISHER, BOYDEN, KALES & BELL, and BOYS, OSBORN & GRIGGS, (J. F. DAMMANN, JR., of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a proceeding under the Workmen's Compensation act brought by plaintiff in error to recover for the death of her husband by reason of an alleged accident arising out of and in the course of his employment by the Vulcan Detinning Company, July 10, 1918. The arbitrator and the Industrial Commission awarded compensation. The circuit court of LaSalle county entered an order setting aside the award and the decision of the commission, and on June 26, 1919, entered an order certifying the cause was one proper to be reviewed by this court, and the case was brought here by writ of error to the June term, 1920.

We are met at the outset by the question whether or not this court has jurisdiction to consider this proceeding under the reasoning in the case of *City of Chicago* v. *Industrial Com.* 292 Ill. 409; whether this case after July 1, 1919, can be brought here by writ of error in any way except by application direct to this court. It is obvious that if the reasoning of the decision just cited is the law, this court is without jurisdiction to review this record by writ of error on the certificate of the trial judge entered before July 1 and brought by writ of error to this court to the June term, 1920. The Workmen's Compensation act, as stated in this last opinion, was amended in 1919, so that the only way to review the record of the circuit court under the amended act was by a petition to this court to be permitted to sue out a writ of error. There is nothing in the amendatory act of 1919 that stated that the act was to be retroactive. As a general rule a statute is to operate in the future, only, and is not to be construed so as to affect past transactions. A retrospective effect will not be given it unless it clearly appears that such was the intention of the legislature. If it is left doubtful as to what was the real design, the statute must be so construed as to have a prospective effect, only. *Thompson* v. *Alexander*, 11 Ill. 54; *In re Tuller*, 79 id. 99.

Section 4 of the Illinois law on statutes reads: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any pen-

alty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." (Hurd's Stat. 1917, p. 2846.)

This court in construing this section has held that unless contrary to the manifest intention of the legislature an act revising another shall not apply retrospectively to pending claims or actions. (*Merlo* v. *Johnston City Coal Co.* 258 Ill. 328.) Under the reasoning of that opinion and the cases there cited, it must be held that, properly construed, section 4 should be so construed, in connection with the amendment of the Workmen's Compensation act in 1919, that the provisions of the old act as to the right of review in this court by writ of error must apply, and that this court would have jurisdiction in this proceeding to review the proceedings of the circuit court on the writ of error here under consideration. This conclusion necessarily follows under the reasoning of *Merlo* v. *Johnston City Coal Co. supra,* and the cases there cited, particularly *People* v. *Zito,* 237 Ill. 434. (See, also, *Western Electric Co.* v. *Industrial Com.* 285 Ill. 279.) This court in the opinion in *City of Chicago* v. *Industrial Com. supra,* did not refer to in any way or consider the provisions of section 4 of the law on statutes, and what is said in that opinion, in any way conflicting with the conclusion here reached on the question of jurisdiction in this proceeding is hereby expressly overruled.

This leaves for consideration the question whether under the evidence the plaintiff in error is entitled, under the Workmen's Compensation act, to recover for the death of her husband. He was working for the Vulcan Detinning Company at the time of his death. That company was en-

gaged in the business of reclaiming tin and steel from tin
scrap, the reclaimed tin being smelted into block tin and
the steel being baled and disposed of to steel foundries.
The work of the deceased consisted of feeding scrap with
a fork to the steel hammer. The factory is located about
two miles from Streator, in LaSalle county, employs about
ninety men and occupies about twenty-five acres of ground,
fenced in. The employees, except the office force, were
furnished for toilet purposes with a frame building about
twelve feet long and six feet wide, with a trench running
through it and tile in the bottom of the trench for water
to pass through. The trench was enclosed on every side,
and instead of ordinary toilet seats for the men to sit on
there was a four-by-four timber, with rounded edges, along
and over the front of the brick trench and located about
eighteen inches from the back wall of the building and
about two feet from the floor, there being a wooden parti-
tion built vertically between the floor and the bottom of
this timber. There was an ordinary board floor in the toilet
in front of the rail or timber. Provision was made for
water to run through the trench, but the trench was some-
times stopped up and had to be flushed out now and then.
Opremchak had been working for the company about four-
teen years. The evidence tended to show that he some-
times drank to excess and on such occasions did not come
to work, but there was no evidence of intoxication on the
morning of his death. During the week previous he had
been sick, complaining of a backache, and was away for
several days from his work. He came back Friday even-
ing, which was the next day after the Fourth of July, and
remained steadily at work until the 10th. On that morn-
ing he left home and went to work at the usual time, walk-
ing to the plant a mile and a half or more. The grounds
were supposed to be open for the employees any time after
six o'clock. He was seen by one of his fellow-workmen
at the plant some time near 6:30 and he left his dinner

295—10

pail and jacket near his place of work, and that was the last seen of him alive. In the course of the forenoon he was missed and inquiries were made and a search instituted. He was found about noon in the east end of the trench or vault of the toilet, lying lengthwise, with his head three or four inches from the east wall and with his feet to the west, partly submerged in the vault contents. His hands were crossed over his chest. His pantaloons were down around his knees and in such shape as to indicate that he had gone to the toilet to attend the needs of nature. The building had to be removed to get the deceased and the body was taken from the trench with grappling hooks. There was a bruise on his right arm and bruises on the legs below the knees, such as might have been made by the hooks, but there were no cuts or open wounds on the body. There was very little water running through the contents of the vault or trench at the time of Opremchak's death. The evidence tends to show that in the process of preparing scrap in the foundry for use alkali was used in the water for cleaning and some of the water from the factory so used flowed into the trench in the toilet, but there is evidence tending to show there was no gas, sulphur or acid found in the contents of the vault at the time the body was removed. The trench was about eighteen inches in width, but there is no clear evidence that he was seriously injured by the fall, although it is possible that some of the bruises on his body were made by his fall into the trench. He had apparently been dead for some hours when the body was discovered in the trench, and the toilet had been used by some of the employees after the body was there without their seeing it. The deceased had a right to go to the toilet any necessary time during his service for the Vulcan Detinning Company, and there can be no question but that his death occurred during his employment. The only question is whether it arose out of his employment.

This court has frequently stated that the burden rests upon the claimant to show by competent testimony not only the fact of the injury but that it occurred in connection with the employment; that the claimant must "furnish evidence from which the inference can be logically drawn that the injury arose out of and in the course of his employment;" that it must rest upon something more than mere guess or conjecture, but that the proof of such facts "may be established by circumstantial as well as by direct evidence, and the greater or less probability, leading on the whole to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts." (*Hydrox Chemical Co.* v. *Industrial Com.* 291 Ill. 579, and cases there cited.) "Liability cannot rest upon imagination, speculation or conjecture,—upon a choice between two views equally compatible with the evidence,—but must be based upon facts established by evidence fairly tending to prove them." (*Peterson & Co.* v. *Industrial Board,* 281 Ill. 326; *Wisconsin Steel Co.* v. *Industrial Com.* 288 id. 206.) While the burden rests upon the claimant to furnish evidence from which an inference can logically be drawn that the injury arose out of and in the course of. the employment, such evidence may be circumstantial. (*Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96.) It is impossible to lay down any rule as to the degree of proof which is sufficient to justify an inference being drawn, but the evidence must be such as would induce a reasonable man to draw such inference. Where the known facts are not equally consistent, where there is ground for comparing and balancing probabilities at their respective values, and where the more probable conclusion is that for which the applicant contends, the arbitrator is justified in drawing such inference. (*Peoria Railway Terminal Co.* v. *Industrial Board,* 279 Ill. 352.) What is evidence of a fact and what is merely guessing at the fact cannot be defined by any formula that one

can invent. What is wanted is to weigh the probabilities, to see if there be proved facts sufficient to enable one to have some ground for comparing and balancing the probabilities and their respective values, one against the other. (*Owners of Ship Swansea Vale* v. *Rice,* 4 B. W. C. C. 298.) There can be no question but that the death of Opremchak occurred while he was in the toilet. There is no evidence in the record tending to show that he had heart trouble or any other chronic disease that would result in his sudden death. There is no question from the record but that the construction of the toilet seat was such that one might easily fall backward from it into the trench, which would not have been possible with a toilet seat as ordinarily constructed. We understand that this toilet has been re-built according to modern methods since the death of the applicant's husband. The evidence shows that he had been in fairly good health, although there is some evidence that he had been poorly for a few days the week previous to the accident. The evidence shows that the feet of deceased were entirely covered by the human waste in the vault when he was found, and there is some evidence tending to show that this matter covered the body up to his chin, and that some of it was even upon his chin, and one witness testified he thought Opremchak was filled up with it, and while there is some evidence that his body below the shoulders was not entirely covered with the material in the vault, it has been repeatedly held that the courts cannot weigh the evidence; that in the absence of fraud the courts are bound by the decision of the Industrial Commission, if there is any legal evidence to support it. *Bailey* v. *Industrial Com.* 286 Ill. 623; *Munn* v. *Industrial Board,* 274 id. 70; *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148; *Chicago Steel Foundry Co.* v. *Industrial Com.* 286 id. 544.

The testimony shows that Opremchak was a strong man physically, about forty-nine years old; that it took him about thirty minutes to walk from his home to the factory

on the day of his death; that he was sober, and that while
he had been suffering from backache a few days before, he
did not call a doctor and went back to work and worked
every day until his death, and that he was a steady worker.
There is no evidence tending to show that he was an
habitual drunkard or any justification for the conclusion
that he fell into the vault while under the influence of liq-
uor, and it would be pure guess or conjecture to say that
he fell because of heart trouble or other chronic disease.
A workman employed in unloading coal from a ship, who
was required in the course of his duty to stand by the
open hatchway through which the coal was being brought
up from the hold, was seized with an epileptic fit while at
work and fell into the hold and was seriously injured. The
court held that regard must be had to the proximate cause
of the accident resulting in the injury, which was to be
found in the necessary proximity of the workman to the
hatchway, and that it was the fall, and not the fit, which
occasioned the accident, which was the effective and so the
proximate cause of the injury. (*Wilkes* v. *Dowell & Co.*
(1905) 92 L. T. R. 677; *Peoria Railway Terminal Co.* v.
*Industrial Board, supra.*) Even if the fall were occasioned
by heart trouble or other chronic disease, under the reason-
ing of the decision just cited that would not necessarily
prevent the fall from being the proximate cause of the
death of Opremchak unless the proof was clear and conclu-
sive that he was dead at the time of the fall. While the
facts in this case might give rise to conflicting inferences
there is certainly ground here for comparing probabilities
at their respective values, and in so comparing them is not
the conclusion from the known facts that Opremchak came
to his death by the fall into the vault more probable than
that he died because of heart trouble or some other sudden
bodily affliction, and were not the arbitrator and Industrial
Commission justified in drawing the conclusion that the
greater probability in this case leads, on the whole, to the

conclusion that the deceased met his death by suddenly falling into the vault during the course of his employment?

The coroner's verdict was introduced on the trial before the Industrial Commission, but it is conceded, and the Industrial Commission stated in its finding, that it was not properly in evidence but that there was evidence outside the coroner's verdict that the death was accidental and arose out of and in the course of the employment. Later, after the body had been buried, an autopsy was requested by a representative of the insurance company and refused by the widow on the advice of her counsel, it is argued, on the ground, as suggested by counsel, that the autopsy after the undertaker's preparation of the body for burial could not show clearly the cause of the death. We are of the opinion that such refusal, under the circumstances found in this record, should not necessarily be treated as an admission or a legal presumption, one way or the other, as to the cause of the death.

The judgment of the circuit court will be reversed and the decision of the Industrial Commission will be affirmed.

*Judgment reversed and finding*
*of commission confirmed.*