ALLEN v. ROBERT GAGE COAL CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CAUSE
   OF DEATH—CONJECTURE—EVIDENCE—SUFFICIENCY.
   Where an employee in a mine was found dead by a fel-
   low employee, and there was no mark upon the body and
   no evidence of any injury or of the cause of death, no
   autopsy having been held, the cause of death was con-
   jectural, and a finding by the department of labor and
   industry that death was accidental within the meaning of
   the workmen's compensation act is lacking in evidential
   support and must be reversed.

2. SAME — PRINCIPAL AND AGENT — AGENT'S AUTHORITY TO ACT—
   ESTOPPEL.
   A statement to plaintiff by a clerk at the mine, after con-
   sulting an assistant in the office of the general manager,
   that defendant would assume responsibility for the death
   and that an autopsy would be unnecessary, does not con-
   stitute an estoppel, in the absence of evidence of authority
   to make said statement or of its ratification by defendant.

Certiorari to Department of Labor and Industry.
Submitted April 12, 1922.   (Docket No. 56.)   De-
cided June 5, 1922.

Olive Allen presented her claim for compensation
against the Robert Gage Coal Company for the acci-
dental death of her husband in the defendant's employ.
From an order awarding compensation, defendant
brings certiorari.   Reversed, and order vacated.

*Humphrey, Grant & Henry*, for appellant.
*Crane & Crane*, for appellee.

CLARK, J.   Defendant is a corporation engaged in
mining and marketing coal.   Its mines are at St.
Charles and Bay City, and its principal office is at Bay

As to what constitutes an accident or personal injury within
the meaning of workmen's compensation acts, see notes in L. R.
A. 1916A, 29 and 227; L. R. A. 1917D, 103; L. R. A. 1918F, 867.

City. Plaintiff's husband, Harvey Allen, was a coal miner of 20 years' experience, but immediately prior to the day in question he had worked 5 years in factories. On his first day in a mine of defendant at St. Charles he was employed as a driver's helper, Steele being the driver. From a room in which the coal was mined through an entry to the base of the shaft the coal was carried on a 36-inch track in two small cars drawn by a mule. In the track were a curve and a grade. The entry was uneven as to width and height. Crossing the top of the entry was an insulated electric cable. There was no electric light at the place in question. The men wore carbide lamps. The brakes to control the cars on the grade were known as sprags. Steele rode in front. Allen either walked or rode in the rear. Usually the helper rode the bumper of the rear car.

After proceeding about 100 feet along the entry, Steele stopped the mule, went back and had Allen remove a sprag. He returned to the front of the cars, drove slowly about 30 feet, stopped, either on the curve or just after passing it and after passing the cable, for the removal of more sprags, looked back, missed Allen's light, heard a moan, went back, and found Allen lying dead across the track, on his back, two or three feet behind the rear car.

From evidence of a careful examination of the body, the department of labor and industry found:

"No marks or evidences of bruise or external injury were found on the person of decedent after death."

It was not known whether Allen was riding or walking just before his death. Allen had always been in good health. But he complained that day of difficulty in breathing. There was evidence that that was commonly experienced on a first day of employment in the mine.

A physician gave in the death certificate the cause

of death as internal injury.    But in explanation he
testified:

"*Q.* You can't say, can you, doctor, that that man
died as the result of any fall, can you?

"*A.* I cannot any more than you might say it was
not an injury.    I cannot say any more than that
either.    I can say it was an injury, as far as that
was concerned.    It is only speculative.    No man can
tell just what the cause of death was, as far as that
was concerned.

"*Q.* The cause of the death?

"*A.* If there had been a *post mortem* that then would
have disposed of the whole problem.

"*Q.* As you said, you made a careful examination
of the entire body of the man, as it lay stripped there
before you, in the undertaking room?

"*A.* I did.

"*Q.* There was nothing whatever apparent from
your examination there, from what you saw, or felt,
or from what you did, to indicate that this man died
as a result of a fall, or as a result of the accident, was
there?

"*A.* No.

"*Q.* His death might have been caused by heart
disease, might it not?

"*A.* Might possibly have.

"*Q.* You don't know?

"*A.* I don't know.    I didn't make that explicit at
all.    When I signed that an 'internal injury,' I thought
it was just as liable to be internal injury as anything
else.    *    *    *

"*Q.* Your testimony is that the cause of his death
is entirely conjectural and speculative?

"*A.* Yes, it is to me.

"*Q.* You can't state whether he died as a result of
the fall, or whether death resulted from natural
causes?

"*A.* No, I can't.    *    *    *

"*Q.* Based upon your observation and examination,
there was nothing to warrant a statement that this
man died an accidental death, was there, doctor?

"*A.* No.    *    *    *

"*Q.* Having reference to other facts pointing to the

death of this man you thought warranted in placing as the cause of death 'internal injury,' didn't you?

"*A.* They were speculative on my part, of course.

\* \* \*

"*Q.* There was no evidence upon which to base 'internal injury'?

"*A.* No, I thought it was just as speculative one way or the other."

There was no autopsy. There was evidence that a clerk at the mine, after consulting an assistant in the office of the general manager at Bay City, had advised plaintiff that defendant would assume responsibility for the death and that an autopsy was not necessary, and that similar statements had been made by the superintendent of the mine.

The death occurred December 16, 1920. Plaintiff knew, January 29th following, that defendant would not pay compensation and on February 4th following defendant denied liability and that an accident had occurred. Plaintiff had the maximum award under the act. Defendant brings certiorari.

The department, after covering the case in some detail, summarizes as follows:

"Several witnesses who had years of experience as miners, and who were familiar with the part of the mine where the decedent was found dead, testified that there were several ways that decedent could very readily have met his death. They testified that he could have struck his head against the roof of the mine at the point where the roof was unusually low; that he could have been brushed against the roof of the mine or the side of the entry and knocked from the car; that he could have fallen or been thrown from the car when it rounded the sharp curve into the main entry, coming down the grade, as it was; or that he could have come in contact with the electric cable which the train had just passed.

"Taking into consideration the evidence as to the unusually good physical condition of the decedent, the fact that there is no evidence of any ailment which

could be said to tend to cause death, and the unusual dangers of death from accident in the immediate locality in which he was found dead or in a dying condition, we find that the decedent's death was due to an accidental personal injury."

But the infirmity of the finding is that there is no evidence to sustain any of the theories advanced. And the department did not definitely fix upon any theory.    Counsel urge that death may have been caused by contact with the electric cable, citing *Paton* v. *Port Huron Engine & Thresher Co.*, 214 Mich. 130. But in that case there was evidence of a defective cable, that shocks were received from it and of a burn caused by electricity upon the body of the deceased. There is no evidence of electrocution in the case at bar. *Meyers* v. *Railroad Co.*, 199 Mich. 134, is also cited. But there a fireman who had been working on a locomotive was found dead on a cement floor beside his engine and the autopsy disclosed concussion of the brain as the cause of death.    Because of the absence here of any like or kindred showing of a cause of death, the cases are distinguishable, and this applies to *Shaw* v. *Packard Motor Car Co.*, 214 Mich. 660, also cited by counsel.

The finding of an accidental death under the act is without evidential support, rests upon mere conjecture, and therefore cannot be sustained.    *Hubbard* v. *Republic Motor Truck Co.*, 216 Mich. 358; *McCoy* v. *Michigan Screw Co.*, 180 Mich. 454 (L. R. A. 1916A, 323) ; *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich. 130; *Chaudier* v. *Stearns & Culver Lumber Co.*, 206 Mich. 433 (5 A. L. R. 1673) ; *Draper* v. *Regents of University*, 195 Mich. 449; *Thier* v. *Widdifield*, 210 Mich. 355.

The record is barren of proof that the employee or employees of defendant who assumed to waive an autopsy, and to acknowledge for defendant responsibility for compensation under the act, had any author-

ity so to do.   The department does not find such authority.   There is evidence that no such authority had been conferred.   In the absence of authority the circumstance does not constitute an estoppel.   There has been no ratification.

Language used in *Maxson* v. *Railroad Co.*, 117 Mich. 218, is applicable here:

"This was an unusual contract, and not such as individuals or corporations are in the habit of making. A division superintendent of a railroad is not a general agent who is, by virtue of his agency, authorized to perform every act, or make every contract, which his principal might do.   To settle claims and make life contracts is not within the ordinary powers of such an agent.   It was, therefore, incumbent upon the plaintiff to show either original authority to make the contract or ratification by the company."

And see *Nephew* v. *Railroad Co.*, 128 Mich. 599; *Hurley* v. *Watson*, 68 Mich. 531; *Randall* v. *Railway Co.*, 113 Mich. 115 (38 L. R. A. 666) ; 2 C. J. p. 947.

The rule seems harsh as applied to this case,—so unfortunate for the plaintiff.

But the award must be vacated.

FELLOWS, C. J., and WIEST, MCDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.