[S. F. No. 13999. In Bank.—January 27, 1931.]

UNION OIL COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, BERTHA PELLE et al., Respondents.

McCutchen, Olney, Mannon & Greene for Petitioner.

Edward O. Allen and C. C. Baender for Respondent.

THE COURT.—This is a petition by the employer to review an award of compensation made by respondent Commission to the heirs of a deceased employee.

The employee was Captain Albert Pelle, master of the Union Oil Company's barge "Santa Paula." His vessel was used to carry oil to ships and wharves in various parts of San Francisco Bay. On January 15, 1928, she was brought to the foot of Seventeenth Street, where the balance of her oil was discharged about 3 o'clock in the afternoon. There being nothing further to do on board until the following morning, the crew went ashore to spend the night. Captain Pelle also left the ship, spent the afternoon at his home in Oakland and returned to San Francisco in the evening. He went to a waterfront hotel, played cards and had a few drinks, and at about 10 P. M., together with his friend Twigg, strolled down to the wharf where the barge was tied. Among other things, it appears that they intended to make a cup of coffee on board. The deck of the barge was about eighteen inches higher than the level of the wharf, and the usual method of getting aboard was to stand on the wharf, grasp the barge's stanchions, and then step on deck. Twigg preceded Captain Pelle and climbed on board in this manner. Shortly afterward he heard Captain Pelle exclaim "Oh," and turning, saw his head disappear over the edge of the wharf, and heard a splash. The captain had appar-

ently fallen through the open space between two piles. It was stipulated that the death was due to drowning.

Respondent Commission took jurisdiction and found that the death occurred in the course of the deceased's employment. Jurisdiction was based upon the ground that the act which gave rise to the cause of action took place on the land. The finding that the death occurred in the course of employment was made on the theory that the captain had gone to the barge to sleep there during the night, in order to arise early and direct its departure in the morning.

The jurisdictional problem presented by this case is one on which our research has failed to disclose any authority directly in point. ■ The deceased was a seaman, engaged in maritime work, and died as a result of drowning in navigable waters of the United States. The cause of action for his death would ordinarily come within the admiralty jurisdiction. (See *London Guarantee etc. Co.* v. *Brooke,* 279 U. S. 109 [73 L. Ed. 632, 49 Sup. Ct. Rep. 296].) To this rule there is the well-settled exception that if an injury is initiated and consummated on land, it comes within the state jurisdiction. Respondent Commission proceeded upon the theory that Captain Pelle fell from the wharf, and that the injury was therefore initiated and consummated with reference to the wharf and not the barge or the navigable waters. The chief reliance is on the case of *T. Smith & Sons, Inc.,* v. *Taylor,* 276 U. S. 179 [72 L. Ed. 520, 48 Sup. Ct. Rep. 228], where an employee at work on a stage resting upon a wharf was struck by a sling operated on the vessel and knocked off the stage into the water. The court said: "Plaintiff in error . . . argues that as no claim was made for injuries sustained while deceased was on land and as the suit was solely for death that occurred in the river, the case is exclusively within the admiralty jurisdiction. But this is a partial view that cannot be sustained. The blow by the sling was what gave rise to the cause of action. It was given and took effect while deceased was upon the land. It was the sole, immediate and proximate cause of his death. . . . The substance and consummation of the occurrence which gave rise to the cause of action took place on land."

The correctness of this principle cannot be questioned, and it is clearly applicable to the situation presented by the instant case if the Commission is correct in its determination, as a fact, that the injury was initiated and consummated on the wharf. There was no direct evidence as to how Captain Pelle met his death. Twigg, the only witness at the scene, said in his testimony: " . . . when we got to the vessel I said to the captain, 'Get aboard,' and he said, 'You get aboard first,' and I got on, and after I got on all I could hear was 'Oh,' and all I could see was his head and he went overboard." From this testimony it might be inferred that Captain Pelle had actually reached the barge, had his feet upon it, and slipped, falling from the barge; or that he slipped on the wharf, and fell from it. The Commission chose the latter inference and contends that this determination is within its conclusive fact-finding power.

■ It cannot be denied that the Commission may base its findings upon inferences drawn from circumstantial evidence. (*George L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 Pac. 17]; *United Dredging Co.* v. *Industrial Acc. Com.*, 92 Cal. App. 110 [267 Pac. 763]; *Mailman* v. *Record Foundry & Machine Co. et al.*, 118 Me. 172 [106 Atl. 606]; *Von Ette's Case*, 223 Mass. 56 [L. R. A. 1916D, 641, 111 N. E. 696]; *Vulcan Detinning Co.* v. *Industrial Com. et al.*, 295 Ill. 141 [128 N. E. 917]. See Ross, Rules of Evidence Before Workmen's Compensation Commissions, 36 Harv. L. Rev. 263, 266.) It is, of course, essential that the inference be a probable one; there must be something in the evidence which leads to the choice of one inference instead of another. (*In re Sanderson's Case*, 224 Mass. 558 [113 N. E. 355]; *Sponatski's Case*, 220 Mass. 526 [L. R. A. 1916A, 333, 108 N. E. 466]; *Hills* v. *Blair et al.*, 182 Mich. 20 [148 N. W. 243]; *Madison Coal Corp.* v. *Industrial Com. et al.*, 320 Ill. 298 [150 N. E. 645]; *Allen* v. *Robert Gage Coal Co.*, 218 Mich. 347 [188 N. W. 388]; *Voelz* v. *Industrial Com. et al.*, 161 Wis. 240 [152 N. W. 830].)

In *Mailman* v. *Record Foundry & Machine Co. et al.*, *supra*, where the award of the Commission was upheld, the court said (p. 609): "In cases wherein the evidence is circumstantial, and not direct, the line between inference and conjecture is sometimes obscure. . . . If, however, a state of

facts is shown more consistent with the commissioner's finding than with any other theory, and the finding is supported by rational and natural inferences from facts proved or admitted, an appeal cannot be sustained.'' In *Roebling's Sons Co.* v. *Industrial Acc. Com.*, 36 Cal. App. 10 [171 Pac. 987, 989], the award of the Commission was annulled by a decision of the District Court of Appeal. This court, while in accord with the judgment, nevertheless rendered an opinion in denying a hearing which reads. in part as follows: '' . . . we deem it proper to say that *we do not understand the rule to be that if different conclusions may rationally and fairly be drawn from the evidence, one sustaining the right to compensation and the other being opposed thereto, the Industrial Accident Commission is not at liberty to adopt the . conclusion favorable to the claim. Of course it is well settled that the commission can do this very thing, and that its conclusion in that regard is beyond the scope of our review.''* (Italics ours.)

It thus appears that both in this court and in other jurisdictions the power of the Commission to draw reasonable inferences from the evidence has been liberally viewed.

■ In the instant case, the Commission concluded from the evidence before it that Captain Pelle had not reached the barge, but fell from the wharf. Is this a probable inference from the evidence? The record discloses that there was enough space between the piles on the wharf for the body of the decedent to slip through; that the deck of the barge was over a foot higher than the wharf; and that to attain the deck of the barge it was necessary to grasp the stanchions and climb on to it. There is no evidence that the deceased ever took hold of the barge's stanchions. The last place in which we find him, prior to his disappearing between the piles, is on the wharf; and since there is no evidence that he had reached the barge, the inference that he fell from the wharf is sufficiently probable to warrant us in sustaining the award of the Commission.

■ With respect to the finding that the deceased met his death in the course of his employment, we are satisfied that the conclusion reached by the Commission should be upheld. The record shows that Captain Pelle was not required to remain on board the barge that night by reason of the rules

of his employer. It was permissible for him to go to his home in Oakland, and he might have stayed there and met the barge at Oleum, to which point it was to be towed in the morning. On the other hand, the tug was to take out the barge at about 6 A. M., and if he desired to take charge of his ship at this time, it would have been impossible for him to stay at home, for the transbay transportation service would get him to the barge after 6:30 A. M. It appears that it was largely discretionary with the captain as to whether he would take the boat out or not, but his discretion was to be exercised for the best interests of his employer. The witness Rosland, clerk for the marine department of the company, testified that the captain was subject to duty "at any time"; that it was up to him where he thought it was best for him to be at the time the vessel departed; that the dispatcher would tell the captain what time the barge would leave, and that if the captain's judgment was that he had to be there several hours before that time, it was up to him. Hence it appears that whether the work of the deceased demanded his presence on board that night was to a large extent subject to his own determination, and that whether he came to such a determination is the important question. On this point the witness Twigg testified: "I asked him why he was at the place at that hour. I thought he probably came in and was on the way home. He said, 'I am going aboard the ship because I have to get out early in the morning, and I could not make it if I stayed at home.' "

It is well settled that if an employee is required to live or board on the premises of his employer, either by the terms of his contract of employment or the necessities of the work, an injury received while on the premises may be compensable, though the employee is not at work at the time of the injury. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28 [227 Pac. 168]; *Giliotti* v. *Hoffman Catering Co.*, 246 N. Y. 279 [56 A. L. R. 500, 158 N. E. 621]; 27 Cal. Jur. 392.) Of course, if the employer's premises were chosen for mere convenience or comfort, with full opportunity to secure other quarters, a different situation is presented. (See *Associated Oil Co.* v. *Industrial Acc. Com.*, 191 Cal. 557 [217 Pac. 744].) In the instant case, however,

there was a definite compulsion upon the deceased to come on board that night. The fact that the compulsion did not arise out of a direct order from his employer is not conclusive; it was none the less a compulsion when it arose out of a required exercise of discretion by the employee himself. It can hardly be disputed that when a captain of a vessel comes to board her at night for the purpose of directing her departure on time in the morning, he is rendering service in the course of his employment. The Commission so found upon sufficient evidence, and we see no reason to disturb its conclusion.

The award is therefore affirmed.

Rehearing denied.