[Civ. No. 13237. First Dist. Div. Two. Mar. 10, 1947.]

LUIS PEREZ JIMINEZ, Respondent, v. LIBERTY FARMS COMPANY (a Corporation), Appellant.

Joseph T. O'Connor, John F. Moran and Harold H. Cohn for Appellant.

W. N. Mullen and Earl B. Myers for Respondent.

DOOLING, J.—Respondent Jiminez, a Mexican national employed as a farm laborer, was injured when a truck belonging to appellant, in which he was being transported to work at the farm of a third party named Heuck, overturned. The appellant defended on the ground that respondent at the time of his injury was an employee of appellant and that his exclusive remedy against appellant was under the Workmen's Compensation Act. If respondent's injury was incurred under circumstances giving rise to a right to recover against appellant under the provisions of the Workmen's Compensation Act that remedy is exclusive and the defense urged by appellant must be sustained (Lab. Code, § 3601; *Baugh* v. *Rogers,* 24 Cal.2d 200, 207 [148 P.2d 633, 152 A.L.R. 1043]), since it is not disputed that respondent while in appellant's employment was covered by insurance against liability under the compensation act. The facts upon which the solution of this question depends are here stated:

Respondent came to the United States in April, 1943, under contract with the government of the United States (Farm Security Administration) to do farm work because of the war shortage of agricultural workers. The government distributed these Mexican workers only through associations with which the government made a cooperative employment agreement. The individual farmer had to apply for field workers to such an association. Appellant got respondent with other Mexicans from the California Asparagus Growers Association, of which it was a member, in April, 1943, immediately on respondent's arrival in the United States. Appellant's con-

tract with the California Asparagus Growers Association ended at the end of the asparagus picking season, June 30, 1943. Appellant wished to keep the Mexicans for other crops (tomatoes and beans). As appellant could not find an association working in that field, Spreckels Sugar Company obliged by helping it to a contract with California Field Crops, Inc. for workers for sugar beet harvesting, under which contract it kept the same workers among whom was respondent. The introductory clause of the contract says that grower (appellant) shall furnish employment to the workers on terms and conditions specified by the government, and assume certain special obligations.

Of this contract paragraph (a) 1. requires the grower to keep the workers employed till the end of the beet harvest. (a) 2. permits use for agricultural purposes other than beet harvest on same conditions (with written consent of processor). (c) Requires the grower to furnish 8-12 hours work on every work day during the employment period and to pay $3.00 a day subsistence allowance to processor for every day that no work is furnished. (f) Provides that grower must furnish housing, water and firewood without charge and board without profit for a price not to exceed $1.50 a day. This was done by appellant, who charged a flat $1.50 a day. From his arrival in the United States until the accident respondent always lived on appellant's farm and had his meals there, at least breakfast and dinner. (g) Entitles workers to benefit of compensation law, California Field Crops to effect the compensation insurance, the grower to restitute the costs. This was done. California Field Crops insured the Mexican labor with Pacific Employer's Insurance Company, the insurance following the workers wherever they might be working, and appellant paid for it. (1) Requires the grower to keep record of work and wages for the processor, California Field Crops and the government. In accordance with this rule the Mexicans were all the time carried on the books of appellant even if they worked on another ranch. Respondent and the other Mexicans worked on appellant's farm under a straw boss, Martinez, an American who spoke Spanish and who in turn stood under the general foreman of appellant.

At a certain time after August 9, 1943, there was no work for the Mexicans to do on appellant's farm, and Johnson, the manager, arranged with Heuck, a farmer in the district who was short of men, to use part of the Mexicans. This

was done to oblige Heuck and also to insure against the possibility that appellant would have to pay $3.00 a day when there was not enough work. The agreement was not for any certain time. Appellant could take the Mexicans back whenever it wanted them and Heuck could presumably have sent back any man or men that he did not want. The men who went there were to go under the orders of Heuck's foreman. When respondent went to Heuck's farm he had always Martinez as foreman (straw boss) with him; Martinez told him that he had to go to Heuck's farm. On Heuck's farm he got all his orders from Martinez; there was nobody else there that spoke Spanish that could give him instructions. Appellant's foreman told Martinez to take his men over to Heuck's farm and to go to work where Heuck's foreman told him. While working for Heuck respondent was under the orders of Heuck's foreman, but the foreman only showed him where to work and then did not come any more. The foreman spoke English and Martinez interpreted the orders to the men. Nobody came from appellant to Heuck's to give Martinez orders. Martinez worked with the men but also supervised them and kept behind them to see to it that the work was done right. Heuck reimbursed appellant for all the work done for the Heuck ranch on bills rendered by appellant. Appellant made the payments to the men. They remained on appellant's payroll as this was required by the War Food Administration otherwise they would have been put on Mr. Heuck's payroll. Heuck was also billed for his share in the workmen's compensation premiums appellant had to pay. The Mexicans still boarded and ate breakfast and dinner at appellant's farm, for which $1.50 was deducted from their gross wages charged Heuck. They left at six in the morning, had to travel half an hour in each direction, worked ten hours, had an hour for lunch and were back at six in the evening for dinner. Respondent had worked that way on August 12, 14 and 16. The first two days somebody from the Heuck ranch picked the workers up with a truck from there; after that appellant supplied the truck. Appellant's foreman told Martinez to take his men in "our own truck." It was a friendly arrangement with Heuck; appellant did not get any direct compensation for the transportation.

On the day of the accident, August 17, 1943, respondent went at six o'clock in the morning with some fifteen other

men who worked for appellant in appellant's truck from appellant's bunkhouse to Heuck's farm. One of these Mexican workers, Mendoza, was driving as directed by appellant's foreman. Somewhat less than half way from Heuck's farm the truck went off the road and turned over, by which accident several men, among whom was respondent, were hurt.

It is respondent's position that by the arrangement between Heuck and appellant respondent for the time being became exclusively the employee of Heuck, not in anyway subject to the direction and control of appellant, and hence that the injuries to respondent did not render appellant liable to respondent to pay him compensation under the Workmen's Compensation Act. (*Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459 [209 P. 31].) In making this argument, which prevailed in the trial court, respondent treats the case as if respondent had already arrived at Heuck's ranch at the time of the injury to himself. He points out that in working at Heuck's ranch respondent was under the direction of Heuck's foreman and argues that the trial court could properly find that appellant had relinquished to Heuck all power of direction and control over respondent in his conduct of such work, reserving to itself no such power.

The salient facts are, however, that at the time of the injury respondent had not arrived at Heuck's ranch but was being transported to Heuck's ranch in appellant's truck by appellant's employee (another Mexican national) at appellant's direction. No word of testimony is pointed to that during the time of such transportation Heuck had any right or power of direction or control over appellant, let alone the exclusive right and power.

As between Heuck and appellant, appellant must be regarded as the general employer of respondent and Heuck as respondent's special employer. Appellant had bound itself by its contract with California Field Crops, Inc. (par. (a) 1) that "the period of employment as to each worker shall . . ., continue . . . until the completion of the harvesting of such acreage, or so much thereof as the Grower actually causes to be harvested. . . ." It had bound itself to pay "for each work day during which the Grower does not furnish such employment of at least eight (8) hours . . . the sum of Three Dollars ($3.00) as a subsistence allowance for such worker" (par. (b)); and it had further bound itself "to furnish without

charge to the worker . . . the housing facilities described in the application . . .'' (par. (f)). Respondent in' his turn had bound himself by his contract with the Government of the United States of America (par. 12): ''The worker will perform all work required of him with proper application and diligence during the term of this agreement, under the direction and supervision of the employers. . . .''

█ Under its contract appellant did in fact furnish housing facilities to respondent. Under the so-called ''bunk-house rule,'' while occupying these housing facilities respondent was still within the scope of his employment by appellant. (*Union Oil Co.* v. *Industrial Acc. Com.*, 211 Cal. 398, 403 [295 P. 513]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28 [227 P. 168]; *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 P. 744]; *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089].) On the morning of the accident at the direction of appellant respondent was in course of transportation in a conveyance furnished by appellant to his place of work on Heuck's ranch. █ It is equally settled that an injury to an employee received while he is being transported to or from work by his employer as an incident of his employment arises out of and in the course of the employment. (*California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 461 and cases cited at p. 463 [132 P.2d 815].)

█ We can see no escape from the conclusion as a matter of law on the facts of this case that respondent not only was subject to, but acting under, the orders of appellant as its employee at the very time and place of his injury and was and is entitled to recover compensation for such injury from appellant under the Workmen's Compensation Act. A different question would be presented had respondent been injured after he reached Heuck's ranch or on one of the earlier days while he was being transported in Heuck's conveyance. Under those circumstances it might be more forcefully argued that for the time appellant had yielded all right and power of direction and control to Heuck. Even so, if appellant retained any right of direction and control, it would still be liable to respondent under the Workmen's Compensation Act (*National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 215, 219 [143 P.2d 481]), even though Heuck might also become liable (*Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 8 Cal.2d 589 [67 P.2d 105]). It is not necessary to invoke this

rule, however, as it does not appear in this case that Heuck had any right or power to control respondent in any manner while he was being transported by appellant in appellant's own truck. We may add that the record indicates that respondent's rights to workmen's compensation against appellant have been protected and preserved.

The judgment is reversed.

Nourse, P. J., and Goodell, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 8, 1947.