**Althea G. WILLIAMS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 28870.**

United States District Court
N. D. California, S. D.

June 13, 1956.

Henry C. Clausen, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

Plaintiff brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., to recover damages for injuries sustained by her due to the negligent operation of an army vehicle by an intoxicated soldier. The negligence and plaintiff's injuries were not disputed by the defendant. The sole question presented for consideration by the trial court was whether the soldier was acting within the course and scope of his employment within the purview of the Tort Claims Act. On June 4, 1952, this court entered judgment in favor of defendant. Williams v. United States, D.C., 105 F.Supp. 208. This judgment was affirmed by the Court of Appeals on September 8, 1954. Williams v. United States, 9 Cir., 215 F.2d 800.

On October 17, 1955 [1] the Supreme Court of the United States vacated judgment for defendant and remanded the case for further consideration stating the following:

"* * * the judgment of the said U. S. Court of Appeals * * is hereby vacated, the case being controlled by the California doctrine of respondeat superior, and * * this cause * * * is hereby remanded to the United States District Court for the Northern District of California, for consideration in the light of that governing principle."

For the sake of continuity of thought, it will be well to restate the pertinent facts to be considered in determining whether the California doctrine of respondeat superior renders the government liable herein. The evidence discloses that on the day of the collision, March 3, 1949, Seabourn had a day off. He and two other soldier friends (Schmidt and Vincent), all of whom had passes and were off duty, left the base at about 8:00 A. M. The testimony of Richard C. Schmidt reads as follows:

"We were together all day. We left camp, and we went out drinking. It was about eight o'clock in the morning when we left, and we went to a tavern about a mile from Harmon Field. We stayed there most of the morning. Later that afternoon we went into Agana and other nearby places to drink and came back at night about 6:30 or 7:00 o'clock and got dressed and changed. That is when Seabourn got the truck. [Seabourn secured a so-called "trip ticket" for the truck mentioned by Schmidt from Sergeant Stiles, a member of Seabourn's company. The ticket was made out about 8:00 A. M. that morning to a driver named Cabera, a soldier who worked with Seabourn, and it discloses that the vehicle had been requested by a Lt. W. R. Werb, and use of the vehicle was therein authorized for "Official business". Neither Seabourn's nor Stiles' name appears on the ticket nor was Seabourn's use of the vehicle in any way indicated

---

1. Supreme Court of the United States, 350 U.S. 857, 76 S.Ct. 100.

thereon.] We left there about eight o'clock and went first to the NCO's Club at the 20th Air Force. We stayed there drinking until 8:30 or nine o'clock in the evening. After that we went in the truck to Agana. There Vincent and myself got off the truck about eleven o'clock and that is the last I know of Seabourn's whereabouts until the next morning."

That same night, a little after the time he dropped his companions off Seabourn negligently crashed his vehicle into the side of plaintiff's car, causing the physical injuries upon which this action is based. Plaintiff asserts that Seabourn was acting within the scope of his employment because he was seeking entertainment; that entertainment is essential to a soldier's morale; and that proper morale is necessary to the maintenance of efficiency in the Armed Forces. The only question now before the court is whether the facts of this case, when considered under applicable California law, will support plaintiff's contention that Seabourn was acting within the scope of his employment at the time of the collision.

Liability on the part of the United States, under the state law, cannot be found, being predicated as it is upon the fact of Seabourn's employment, if Seabourn was pursuing his own ends at the time of the collision. This is so, even if the injury complained of could not have been committed without the facilities afforded to Seabourn by his relationship to the army. Stephenson v. Southern Pacific Co., 93 Cal. 558, 29 P. 234, 15 L.R.A. 475; Brown v. Chevrolet Motor Co., 39 Cal.App. 738, 179 P. 697. Whether or not the employer is responsible for the act of an employee which injures a third party depends, therefore, upon whether the employee was engaged at the time of injury in the transaction of his employer's business or whether he was engaged in an act which was done for his own personal convenience or accommodation and related to an end or purpose exclusively and individually his own. In other words, if an employee uses his employer's vehicle, not in furtherance of his employer's business, but for his own individual use, he is merely a borrower and the relationship of employer and employee not existing during the course of such use, the employer is not liable for his acts. Kish v. California State Automobile Ass'n, 190 Cal. 246, 212 P. 27; Duff v. Schaefer Ambulance Service, 132 Cal.App.2d 655, 283 P.2d 91; Lee v. Nathan, 67 Cal.App. 111, 226 P. 970; Slater v. Friedman, 62 Cal.App. 668, 672, 217 P. 795; Gousse v. Lowe, 41 Cal.App. 715, 183 P. 295. Reduced to its simplest terms, the crux of the problem is whether Seabourn was acting on behalf of his master at the time of the collision.

Viewing the factual situation in this case, it would be stretching the standards set out by the California law beyond logical legal limits to hold that when an employee *on his day off*, as herein, goes from bar to bar imbibing beer and wines, without any evidence of furthering his employer's business enterprise, that he was prosecuting or occupying himself with his employer's activities, merely because he was driving his principal's vehicle. This conclusion is amply supported by the California cases dealing with the use of an employer's vehicle by an employee.

For example, in the case of Kish v. California State Automobile Ass'n, supra, the employer, an automobile association, hired two men to install road signs. They had no fixed place or hours of employment and were allowed their meals as part of their expense account. The employer permitted the employees to use the same truck employed on the job in going to and from their meals. The court held that the employees were not engaged at the time of collision between the truck and another vehicle, in the performance of an act either directly or indirectly connected with the business of their employer or incidental thereto, where the collision occurred after they had finished the job of putting up signs for the day and after they had gone home and were on the way down-

town for supper. The court stated in its opinion [196 Cal. 246, 212 P. 29]:

"We cannot assent to the reasoning of plaintiff that because it was necessary for employees to eat and sleep in order to perform the labor for which they are employed, that these acts are incidental to their employment." Further, in the opinion, the court stated: "If, for instance, the employees had decided to defer dinner until after the theater, could it be said that during the interim they were engaged in their employer's business? Or if the employees had concluded that they would go to an adjoining town, twenty or thirty miles away, to get a meal, surely it could not be said that the trip was within the scope of their employment."

The applicability of the above decision is readily apparent; the employees had gone home, and the employer was no longer responsible for their activities after that time. In the instant case, Seabourn was on his day off, and as the evidence shows, was completely free to exercise his own judgment as to what recreation he would partake of during his time off from his duties. Seabourn might have had two days off, or a week off, and yet if plaintiff's theory in this case were accepted by this court, any self-selected act of "recreation" by Seabourn during such protracted period would nevertheless spell out liability on the part of the government.

In the case of Lee v. Nathan, supra [69 Cal.App. 111, 226 P. 971], appears the following language in accord with the aforesaid principle:

"When Apperson reached the garage with the car, there then remained nothing further for him to do in the master's business. He was thereafter his own master and was free to go home or elsewhere according to his own peculiar pleasure or inclination, and, if he chose to go home, he was free to go by whatever means he elected. His use of his employer's automobile in going home did not spring from any duty that he owed to his employer. His employer could not be benefited directly or incidentally thereby."

The holding in the case of Slater v. Friedman, supra, also recognizes this principle. Plaintiff brought an action for damages for personal injuries sustained while plaintiff was riding as passenger in a taxicab. The evidence showed that the driver of the taxi was authorized to work from 10:00 o'clock in the morning until 10:00 o'clock at night. The accident occurred at 10:45 P.M. The court held that since the evidence showed that the driver was at liberty from his service and pursuing his own ends exclusively, defendant owner of the taxicab could not be held responsible even though he afforded the means without which the accident might not have occurred.

The court has considered the many California cases cited by plaintiff in support of her position herein;[2] however,

2. Larson v. Industrial Accident Comm., 193 Cal. 406, 224 P. 744; State Compensation Insurance Fund v. Industrial Accident Comm., 194 Cal. 28, 227 P. 168; Employers' Liability Assur. Corp. v. Industrial Accident Comm., 37 Cal.App.2d 567, 99 P.2d 1089; Union Oil Co. v. Industrial Accident Comm., 211 Cal. 398, 295 P. 513; Truck Insurance Exchange v. Industrial Accident Comm., 27 Cal.2d 813, 167 P.2d 705; Pacific Indemnity Co. v. Industrial Accident Comm., 26 Cal.2d 509, 159 P.2d 625; West v. Industrial Accident Comm., 79 Cal.App.2d 711, 180 P. 2d 972; Jiminez v. Liberty Farms Co., 78 Cal.App.2d 458, 177 P.2d 785; Pacific

Employers' Ins. Co. v. Industrial Accident Comm., 77 Cal.App. 424, 246 P. 825; Villanazul v. City of Los Angeles, 37 Cal.2d 718, 721, 235 P.2d 16; Employers', etc., Corp. v. Industrial Accident Comm., 37 Cal.App.2d 567, 99 P.2d 1089; Vertex Inv. Co. v. Schwabacher, 57 Cal. App.2d 406, 134 P.2d 891; Carr v. Wm. C. Crowell Co., 28 Cal.2d 652, 171 P. 2d 5; De Mirjian v. Ideal Heating Corp., 129 Cal.App.2d 758, 765, 278 P.2d 114; Reinert v. Industrial Accident Comm., 46 Cal.2d —, 294 P.2d 713; Wiseman v. Industrial Accident Comm., 46 Cal.2d —, 297 P.2d 649.

no California cases have been cited to the court directly applicable to plaintiff's theory that a soldier using an army vehicle for his own recreation is serving his employer. This is understandable since decisions construing actions of military personnel generally arise in the federal courts. In this vein, the plaintiff has consistently relied upon two decisions of the Ninth Circuit Court of Appeals, United States v. Johnson, 181 F.2d 577, and Murphey v. United States, 179 F.2d 743, 745. Since the Murphey case deals with the "recreation-morale" theory, and plaintiff relies most heavily on its holding, the court will discuss it first.

In that case the soldier-driver drove an army vehicle under *specific authorization* of his commanding officer and under *instructions* that it might be used to carry some soldiers into town " 'for entertainment, movies, etc.' " The deviation from *specific instructions*, to visit an Indian ceremonial dance held a short distance away, was considered insufficient to take such activities without the course of employment. When one weighs the evidence in this case against the evidence in the Murphey case, it is apparent that a far reaching extension, unwarranted by the Murphey case or California law, would have to be made to find the United States liable herein.

The Court of Appeals carefully delimited its holding by pointing out:

"This case concerns specifically allowed amusements, here 'movies, etc.' in the town of Klamath. We are not holding that in any case where a soldier is on a frolic of his own he can make the government liable simply because he there found entertainment."

The instant case comes within this recognized and expressly stated exception. In the Murphey case the uncontradicted testimony was "that the employing government, through Brander's superior officers knew that 'as incidental acts' the truck was employed to reach places of entertainment even short distances outside of Klamath." In the instant case Seabourn's superior officers did not issue instructions as to where the vehicle was to be taken, nor did they have knowledge of Seabourn's recreational activities on the day in question. The evidence shows that Seabourn was on a frolic of his own, free to find entertainment wherever his own proclivities and desires might lead him. As stated by Richard C. Schmidt, Seabourn's soldier friend, "That's about all we did, drinking and running around." In the Murphey case Brander was seeking *specified* entertainment which would improve his morale. Not so in the instant case. Seabourn was neither "directly or indirectly serving his master" within the scope of his employment, because he was serving only his *own personal desires* not at all connected with any recreational activities authorized by his employer.

The army regulations covering special uses of army vehicles, although not binding on the question of liability herein, refer only to authorized athletics, organized and supervised recreational welfare, and morale-building activities.[3]

■■ It is a fair statement, and the Murphey case and the case of Boynton v. McKales, 139 Cal.App.2d ——, 294 P.2d 733, are representative of such holdings, that an employee may be serving his master while attending certain recreational or social functions at which he may be also satisfying his own desire for enjoyment and pleasure. These cases are in accord with the California law that where an employee is combining his own business with that of his employer, or attending to both at substantially the same time,

---

3. "28. Special uses.—Motor vehicles, when available without detriment to other official business * * * may be used by special direction of the commanding officer for the following purposes:
  "a. Authorized athletics.

"b. Transporting personnel, including entertainers and party guests and supplies and equipment in connection with authorized, organized, and supervised recreational, welfare, and morale-building activities.

no nice inquiry will be made as to which business the employee was engaged in when a third person is injured; but the master will be held responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master. Ryan v. Farrell, 208 Cal. 200, 204, 280 P. 945, 946. Further, the California courts here recognized broad liability under the respondeat superior doctrine where an employee's conduct is intimately connected with his service to his employer. Pritchard v. Gilbert, 107 Cal. App.2d 1, 236 P.2d 412; see also Kroupa v. Oak Park Theatre Co., 111 Cal.App. 2d 514, 244 P.2d 985.

The Murphey case, however, and the California cases cited above do not, in this court's view, stand for the broad proposition that the government's liability under the "recreation-morale" theory will only be limited by the ingenuity and resourcefulness of our soldier's and sailor's energetic search for entertainment on their days off. The instant case is representative of those cases where a service man is engaged solely in the pursuit of his own personal recreation and pleasure, during which time he is neither incidentally, simultaneously or in part serving his master's business or his master's desires; nor does the case of United States v. Johnson, supra, help plaintiff's position. The evidence in that case shows that Moore (the sailor-driver) was required on the date of the collision as his duty and as part of his course of employment to deliver a certain report to the Dispensary. The Court of Appeals held in this case that the trial judge had the right to find that at the time when the accident occurred, Moore had resumed his employment. This holding is inapplicable to the instant case, since Seabourn was not in the course of his employment when he left the base, and during all the time he was on his "day off" was never serving his master. Therefore the question is not presented as to whether he had resumed his employment prior to the time of collision.

■ . In summary, Seabourn's conduct on the entire day of the collision cannot be construed under California law to have been within the scope of his employment. At the time of the accident he was on his day off—subject to his own whims, desires and devices. The evidence is devoid of any showing that Seabourn, at any time during the course of his day off interspersed his employer's work with his own personal and unrelated activities. In the absence of these factors the court finds that the facts in this case do not meet the test of the respondeat superior doctrine as enunciated by the California cases so as to impose financial responsibility on the United States.

In accord with the foregoing plaintiff's motion in the alternative for judgment or for a new trial must be denied.