[L. A. No. 3189. Department Two.—March 26, 1914.]

CALEB CHAMBERLAIN, Respondent, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Appellant.

ELECTRIC CORPORATION—NEGLIGENCE OF DRIVER OF AUTOMOBILE—SCOPE OF EMPLOYMENT—INJURY TO THIRD PERSON.—A corporation engaged in producing and distributing electricity for light, heat, and power is liable for personal injuries sustained by a third person through the negligence of the driver of one of its motor trucks, while acting under orders of his superior in towing the automobile of an employee of the company to the shop maintained by it for the repair of its own motor vehicles, although the usual employment of the driver is that of distributing supplies, and the repairing of automobiles is not one of the purposes for which the corporation was organized.

ID.—ACTION IN TORT AGAINST CORPORATION—DEFENSE OF ULTRA VIRES. Whether the agreement whereby the corporation was to take the automobile to its shop and repair it was or was not beyond the granted powers of the corporation, is immaterial so far as concerns the liability of the corporation for the torts of the driver. In an action against a corporation, founded upon tort and not upon contract, the defense of *ultra vires* is not available.

APPEAL from a judgment of the Superior Court of Los Angeles County. M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

H. H. Trowbridge, for Appellant.

Newman Jones, and Mark A. Somers, for Respondent.

MELVIN, J.—Defendant appeals from a judgment in favor of plaintiff for two thousand dollars awarded as damages for personal injuries.

The Southern California Edison Company is a corporation engaged in the business of manufacturing and distributing electricity for light, heat, and power. One of its employees, J. A. Lighthipe, owned an automobile which was in need of repairs. The general storekeeper of the corporation was W. T. Sterling, and J. G. Rosso was the driver of one of the company's automobile trucks used in distributing supplies. Rosso was under Sterling's direction but was subject to orders also from the president, the general manager, or the assistant general manager. Sterling, the storekeeper, ordered Rosso, the chauffeur, to go to the residence of Lighthipe with the company's truck of which Rosso was the driver and to bring Lighthipe's motor car to the shop which the corporation maintained for the repair of its own motor vehicles. This order was obeyed and while Rosso was towing Lighthipe's automobile, Caleb Chamberlain was injured through the carelessness and negligence of Rosso. It was shown that Lighthipe's automobile was repaired at the company's shop; that a bill was rendered by the corporation and paid by Lighthipe; and that the charges so made and paid amounted to the actual cost to the company of the material and labor. Both the corporation and Lighthipe were made defendants in this suit, but upon motion of the plaintiff the action against the latter was dismissed and judgment was entered against the Southern California Edison Company.

The sole attack of the appellant is upon that part of the findings which declares that the motor truck was in charge of a servant of the Southern California Edison Company at the time of the infliction of the injuries upon Chamberlain. In this behalf the assistant general manager of the corporation testified that he had not instructed Sterling to send for Lighthipe's automobile. It was not denied, however, that Sterling did give the order to Rosso and there was no proof that some one higher in authority than the assistant general manager

did not order the work to be done. The defendant's articles of incorporation were introduced in evidence and attention is called to the fact that the repairing of automobiles is not one of the purposes for which it was organized.

The contention of appellant is that Rosso was not engaged in his master's business at the time of the infliction of the injuries upon plaintiff but was acting for Lighthipe. It is true that Rosso in the course of his examination said: "I was in charge of that machine but I was not exactly doing work for them, I was towing a machine for Lighthipe." But in almost the next breath he said: "I got my orders from W. T. Sterling, the general storekeeper of the Southern California Edison Company, the one I was employed under." Later in his examination Rosso admitted that Lighthipe had never spoken to him about the motor car. Consequently the court was justified in rejecting Rosso's conclusion that he was working for the owner of the vehicle which was being towed at a time when Rosso was acting under the orders of his superior in the defendant's employ, driving the defendant's motor truck and drawing pay from the defendant as its servant. According to the undisputed facts in the case the defendant was clearly liable. It makes no difference that Rosso's usual employment was the distribution of supplies. His business was to operate his motor truck under the orders of his superior and that was exactly what he was doing at the moment when his carelessness caused the injury to plaintiff. The defense of *ultra vires* is untenable. If the defendant were a natural person and should order his servant to bring an automobile to his place of business there would be no doubt of his liability for such a tort as this occurring during the time when his command was in process of execution. He could not justly defend upon the theory that he was a banker and not a blacksmith. It would make no difference if he intended to use the automobile, after repairing it, in transporting firearms across the Mexican border. Upon a like principle the defendant corporation may not escape liability for the torts of its servants, acting under its orders, upon the theory that it is not authorized to make repairs upon the instrumentality which caused the damage. To hold otherwise would be to give to an artificial person immunity not enjoyed by a natural one. A corporation acts through its officers and servants. When the

plaintiff established the fact that the driver of the motor truck was a servant of the defendant acting under orders of one of its officers who had authority to direct him in his work, a *prima facie* case was established in favor of plaintiff. This condition was not changed by reason of the fact that the assistant general manager did not order the work to be done on Lighthipe's automobile. The fact remains that one having apparent authority gave the order and no showing was made that this authority was not real—indeed, all of the circumstances, including the collection of the cost of repairs, point to the existence of an agreement between the corporation and its employee by which the latter's automobile was to be taken to the former's shop and there to be put in proper condition. Whether such a contract was or was not beyond the granted powers of the corporation is immaterial. In either view the corporation would be responsible for torts committed by its servant. The rule is that actions like the one at bar being founded not upon contract but upon tort, the defense of *ultra vires* is not available. In an action arising *ex delicto* like this one, it makes no difference what sort of a contract the party causing the injury may have been performing when the injury was inflicted. (*Central R. R. & Banking Co.* v. *Smith*, 76 Ala. 572, [52 Am. Rep. 353] ; 10 Cyc. 1207, 1208.) "Under the rule of *respondeat superior* a corporation is civilly liable for torts committed by its servant or agent while acting within the scope of his employment, although the corporation neither authorized the doing of the particular act nor ratified it after it was done." (See 10 Cyc. 1205, and cases cited.) In the case at bar the servant acted by authority and the principal ratified his act by repairing, for a consideration, the motor car which he had taken to its shop.

Appellant's counsel cite certain cases in which owners of automobiles and other agencies have been held not to be liable for injuries inflicted by servants acting without authority. Eight of the cited decisions involve the principle that a chauffeur using his master's car on his own private business is not acting within the scope of his employment and that his tort is not imputable to the owner of the automobile. These cases are: *Lotz* v. *Hanlon*, 217 Pa. St. 340, [118 Am. St. Rep. 922, 10 Ann. Cas. 731, 10 L. R. A. (N. S.) 202, 66 Atl. 525] ; *Danforth* v. *Fisher*, 75 N. H. 111, [139 Am. St. Rep. 670, 21

L. R. A. (N. S.) 93, 71 Atl. 535]; *Slater* v. *Advance Thresher Co.*, 97 Minn. 305, [5 L. R. A. (N. S.) 598, 107 N. W. 133]; *Steffen* v. *McNaughton*, 142 Wis. 51, [19 Ann. Cas. 1227, 26 L. R. A. (N. S.) 382, 124 N. W. 1016]; *Jones* v. *Hoge*, 47 Wash. 664, [125 Am. St. Rep. 915, 14 L. R. A. (N. S.) 216, 92 Pac. 433]; *Daily* v. *Maxwell*, 152 Mo. App. 424, [133 S. W. 351]; *Doran* v. *Thomsen*, 74 N. J. L. 445, [66 Atl. 897]; *Reynolds* v. *Buck*, 127 Iowa, 602, [103 N. W. 946]. They have no application to the facts of this case, because in each of those cases there was an absence of authorization on the part of the owner for the use of the motor vehicle, while in the case before us the driver was not engaged upon his own private business. *Hartley* v. *Miller*, 165 Mich. 116, [33 L. R. A. (N. S.) 81, 130 N. W. 336], was a "borrowing" case, the injuries for which damages were sought having resulted from the negligent driving of one who had borrowed another man's automobile. The owner was properly held blameless. In *Clark* v. *Buckmobile Co.*, 107 App. Div. 121, [94 N. Y. Supp. 772], the evidence showed that an employee of the defendant corporation who had been absent from the city on his own private business telephoned from the station on his return asking another employee to call for him in a motor car belonging to their employer. The request was complied with, and on the return trip from the station plaintiff was injured because of the careless driving of the vehicle. It was held that a verdict in favor of the plaintiff was against the weight of the evidence because the men were not acting within the scope of their employment. The case of *Brown* v. *Jarvis Engineering Co.*, 166 Mass. 76, [55 Am. St. Rep. 382, 32 L. R. A. 605, 43 N. E. 1118], was also very different from the one at bar. Several workmen, under the supervision of a foreman and employed by the defendant, were engaged in laying certain brick work in the basement of a building. A van containing heavy rolls of paper was backed up to the rear entrance of the building and it became necessary for the defendant's foreman and bricklayers to cease the work upon which they had been engaged until the paper had been unloaded and rolled into the basement. Plaintiff was the driver of the van. Without his knowledge or request one of defendant's men went upon the dray for the purpose of assisting in the unloading of the paper and there set in motion one of

the rolls which fell upon plaintiff, injuring him severely. There was some testimony that the foreman had ordered his men to assist in unloading the wagon so that the bricklaying work would not be delayed too long. It was held that even if he did give such order, the acts of the servants of defendant were not the necessary or natural or proper result of anything that they were employed to do. In the case at bar the towing of the automobile was the natural result of the order which Rosso had received from his superior. *Higgins* v. *Western Union Tel. Co.*, 156 N. Y. 76, [66 Am. St. Rep. 537, 50 N. E. 500], was a case in which the owner of a building was held not to be liable for injuries inflicted upon a mason by the carelessness of an operator of one of defendant's elevators. But in that case the conductor of the elevator having suspended the work of carrying passengers operated the elevator for the accommodation of the mason *under the latter's direction* and while he was so doing the mason was injured through the conductor's negligence. The mere statement of the facts of that case shows that the discussion contained in the opinion there can have little value in this case, because of the totally different facts here involved.

The true rule is stated in the opinion in the case of *Moon* v. *Matthews,* 227 Pa. St. 493, [136 Am. St. Rep. 902, 29 L. R. A. (N. S.) 865, 76 Atl. 219]. In that case it was contended that the chauffeur who had been driving the defendant's automobile was acting outside the scope of his employment at the time the plaintiff was struck by the car. Defendant testified that the accident occurred during his absence and that he had forbidden the chauffeur to take the car out of the garage while he (the owner) was away. It was shown, however, that the man was acting in obedience to the command of the defendant's sister, a member of his household. The court said in part: "It was shown that the automobile belonged to defendant, and at the time of the accident was being operated by his regular chauffeur, not upon any errand of his own, or to serve his own purposes, but in obedience to the order of a member of defendant's family. That the occupants of the car were friends of defendant, and guests of his sister, and the errand upon which the car was taken was entirely proper and fitting in itself. Under such circumstances, the burden was upon the defendant to show that the

chauffeur was not acting within the scope of his employment, and upon the business for which he was employed by his master. The test is, whether the act was done in the prosecution of the business in which the servant was employed to assist. If it was, the master is responsible. The fact that while acting for the master he may have disobeyed his commands, does not take the act out of the scope of his employment: *McClung* v. *Dearborne,* 134 Pa. 396, [19 Am. St. Rep. 708, 8 L. R. A. 204, 19 Atl. 698]." The reasoning in the opinion in the case of *Jessen* v. *Peterson, Nelson & Co.,* 18 Cal. App. 350, [123 Pac. 219], also supports the conclusions which we have reached.

The evidence abundantly sustains the finding which is attacked. The judgment is accordingly affirmed.

Henshaw, J., and Lorigan, J., concurred.