[L. A. No. 15681.   In Bank.—January 28, 1937.]

MITCHELL CAMERA CORPORATION (a Corporation), Appellant, v. FOX FILM CORPORATION (a Corporation), Respondent.

Call & Murphey, Guy T. Graves, Robert B. Murphey, Alex W. Davis and Roy C. Bonebrake for Appellant.

Alfred Wright and Gordon Hall, Jr., for Respondent.

EDMONDS, J.—By this action appellant seeks to recover for fifty motion picture cameras which it alleges were specially manufactured by it for the respondent. The appeal is from a judgment of nonsuit.

Appellant is an established manufacturer of motion picture cameras, having been in business since July 1, 1929, as Mitchell Camera Corporation, a Delaware corporation, and prior thereto as a California corporation of the same name. According to the testimony of its president, the company then supplied ninety per cent of the motion picture cameras used in southern California. Its business with the respondent commenced in January, 1928, and was transacted almost, if not entirely, through Fox Case Corporation, a subsidiary corporation. The case went to trial upon a complaint of ten counts which alleged a series of transactions between the parties. At the conclusion of plaintiff's case, the court granted respondent's motion for a nonsuit upon all except two of the causes of action. A subsequent judgment for plaintiff has disposed of the issues upon all of the causes of action except the fourth, fifth, sixth, ninth, and tenth. This appeal, consequently, is directed only to the order made upon the motion for a nonsuit on those counts and the judgment entered thereon.

In the fourth cause of action appellant alleges that in January, 1928, the respondent made arrangements with appellant for it to design and manufacture, according to certain specifications submitted by the respondent, one Grandeur motion picture camera to hold a film 70 mm in width and with special performations, for which it received payment of $13,000. It is further alleged that in December, 1928, respondent gave appellant an order in writing to manufacture two Grandeur cameras at a price of $8,500 each, which cameras were accepted and paid for by respondent. A further allegation is that in January, 1929, the respondent ordered another Grandeur camera which was accepted and paid for by it.

These allegations are repeated in each of the other causes of action. As appellant admits that it was paid in full for the four cameras ordered, these transactions are apparently included in the complaint to show the course of dealing between the parties. Respondent makes no denial in its answer that it ordered the first camera. It specifically admits that it gave the appellant an order for two cameras, which were manufactured pursuant to plans and specifications furnished by it and that upon completion these cameras were accepted and paid for by it. It also admits that in June, 1929, it received another Grandeur camera from respondent and paid $8,500 therefor, but it denies that this camera was manufactured or produced by the appellant pursuant to any agreement or understanding between appellant and respondent. It alleges that this last camera was delivered to it by the appellant after its manufacture or production in the usual course of business and that the price paid was the regular price charged by appellant for cameras of a like character and quality and pursuant to its ordinary and customary mode of carrying on and transacting business.

It thus appears that appellant and respondent do not disagree in any matters concerning the first three cameras manufactured by appellant and sold to respondent, but that respondent insists that the fourth one was produced as a stock article and not by special order and that it was purchased by respondent as such.

The complaint then continues with a recital of the transaction which is in controversy here. It alleges that in October, 1929, respondent gave appellant an oral order and direc-

tion for it to manufacture specially for the respondent and according to certain specifications submitted by the respondent, 50 Grandeur motion picture cameras at $8,500 each, to be paid for as completed; that on December 24, 1929, respondent gave appellant its written confirmation of this order; that in January, 1931, appellant had substantially completed 16 cameras and had, with the knowledge of respondent, brought an additional 34 to various stages of completion; that respondent did not call for or pay for any of the cameras as they were completed, but that appellant, with the permission of respondent, sold two of them to Metro-Goldwyn-Mayer Corporation for $5,335, and another to Feature Productions for $5,760. Appellant alleges the sum of $67,471.67 to be the cost of bringing the 34 cameras to completion; that they are not suitable for the general trade or for sale to others; that there is no market or other value for them; and that accordingly appellant has been damaged in the sum of $346,433.33.

An important allegation from the standpoint of appellant's theory of its right to recover is, "that said cameras were to be manufactured specially for defendant and according to specifications furnished by defendant from materials furnished by said plaintiff and not for the general market and the total price of $425,000 agreed to be paid by the defendant was to be in payment of the labor, services and materials in so manufacturing said cameras".

The fifth cause of action is identical with the fourth except that where the fourth cause of action alleges that the parties agreed upon the price of $425,000, payable $8,500 as each camera was completed, the fifth cause of action alleges that the cameras were to be manufactured for a reasonable price, which the plaintiff alleges to be $425,000, payable $8,500 as each camera was completed.

The sixth cause of action is one upon the common count for labor and services performed and materials furnished by the appellant for the respondent at the special instance and request of respondent for $346,433.33.

The ninth cause of action includes the allegation concerning the first four cameras and then alleges that appellant and respondent entered into a contract which said contract or an order or memorandum thereof was and is in writing executed by the defendant, by the terms of which plaintiff

agreed to sell and defendant agreed to buy 50 additional Grandeur cameras to be manufactured in the factory of appellant according to certain specifications theretofore furnished by the respondent for the sum of $425,000.

It is further alleged that in January, 1931, 11 cameras had been completed and that the reasonable cost of completing the others was $57,831.48; that respondent refused to accept any of these cameras and that appellant has been damaged in the sum of $367,148.16, the cameras having no market or other value.

The tenth cause of action is the same as the ninth with the exception that as to the 50 cameras it is alleged that the respondent agreed to pay a reasonable price for them, which reasonable price is asserted to be the sum of $8,500 each.

All of the allegations of each of the causes of action concerning the 50 cameras are denied. In addition, respondent set up as a separate defense to each of the counts except that upon the *quantum meruit,* (1) the statute of limitations fixed by section 339 of the Code of Civil Procedure; (2) the statute of frauds (sec. 1624a, Code Civ. Proc.); (3) a breach of the contract by appellant in that the cameras were not completed within the time or delivered at the place required thereby; and (4) an abandonment of the contract in January, 1930, by agreement of the parties.

The story told by this complaint when read against the background of the evidence offered by appellant is one of challenging and compelling interest. It appears that motion pictures have always been made on a film 35 mm in width. With the advent of sound pictures, executives of the Fox Film Corporation became interested in the possibility of producing pictures on wider film. It was thought that many advantages might be secured with pictures on larger frames. The Fox interests in cooperation with the manufacturers of motion picture cameras endeavored to design a camera which would take film 70 mm wide, double that of the standard film. These became known as Grandeur cameras. All of this was undertaken during a period of great activity and expansion in the motion picture business. There was still much uncertainty concerning the manner in which sound pictures would eventually be produced most successfully. The efforts of the Fox companies were directed toward se-

curing cameras which would successfully handle wide film before competitors could obtain them. The story of what was accomplished from a mechanical and artistic standpoint is part of the annals of the great industry which has risen to colossal proportions in so short a time. But from the record of this case it appears that the Fox companies so thoroughly believed in the merits of large pictures that they made every effort to be the first producer to completely equip its studios with equipment necessary to produce them.

This plan and purpose is not denied by the respondent. But it contends, first, that the evidence fails to establish the existence of a contract for the cameras, and, second, that any contract which was made under the circumstances shown falls within the statute of frauds. These defenses go to the very foundation of appellant's claims against it and bring up for determination here the question of the sufficiency of the evidence to establish a *prima facie* case for the appellant.

■ On a motion for nonsuit, if a plaintiff has presented evidence of so substantial a character that notwithstanding any conflict which would be raised by evidence produced by the defendant to the contrary it would support a judgment in his favor, the motion must be denied. The evidence must be taken most strongly against the defendant. ■ "Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiff. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If contradictory evidence has been given it must be discarded. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252].) The plaintiff must be given the benefit of every piece of evidence which tends to sustain his averments and such evidence must be weighed in a light most favorable to plaintiff's claim. (*Anderson* v. *Wickliffe,* 178 Cal. 120 [172 Pac. 381].) ■ Evidence whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered." (*Gregg* v. *Western Pac. R. R. Co.,* 193 Cal. 212, 216 [223 Pac. 553].)

The evidence presented by the appellant must be measured by these rules.

William Fox testified that at the time of the transactions in question he was the president of both the Fox Film Corporation and Fox Case Corporation and its successor, Fox-Hearst Corporation, with the duties of directing and supervising the general operations of each corporation; that the business of Fox Case Corporation was to develop and secure for itself and Fox Film Corporation various motion picture equipment, including that for the use of wide film; that it was the custom of Fox Film Corporation to order the purchase or manufacture of motion picture cameras using either standard or wide film through Fox Case Corporation, which would give a purchase order in its name; that goods so ordered would be delivered generally directly to Fox Film Corporation, and paid for either by it directly or by Fox Case Corporation, which would be later reimbursed by Fox Film Corporation; that Fox Case Corporation never had any use for more than a very few wide film cameras; that he had given orders that the Fox Film studios in Los Angeles were to be supplied with all equipment necessary for the proper production of wide film pictures, and that this was to be ordered through Fox Case Corporation; that later, Winfield Sheehan, general manager of Fox Film Corporation, reported to him that the Fox Studios would be fully equipped if 50 additional wide film cameras were ordered immediately and that he instructed Mr. Sheehan to take the matter up with Courtland Smith, manager of Fox Case Corporation; that he also discussed the matter with Mr. Smith and instructed him to place an order, for 50 cameras, with the appellant, the purpose of Fox Film Corporation at this time being to photograph every scene with both a standard 35 mm camera and also with a 70 mm camera.

Courtland Smith testified that he was in complete control of the operations of the Fox Case Corporation during the time of the transactions in controversy and had general supervision of all of its business; that he authorized the giving of Fox Case Corporation's orders to appellant for the wide film cameras and equipment which had been bought prior to the transactions in controversy; that afterwards, Mr. Sheehan asked that the Fox studios be placed in a position as quickly as possible to photograph everything with

wide film cameras as well as standard cameras and that in October, 1929, he, Smith, told Mr. Sponable, chief engineer of Fox Case Corporation, who was then in Los Angeles, to order 50 wide film cameras from the appellant.

George A. Mitchell, chief engineer of the appellant, testified that Mr. Sponable, who was then consulting with appellant's officers from time to time concerning cameras being manufactured for the Fox interests, was at appellant's factory in October, 1929; that Mr. Sponable then stated to him in the presence of Keith Weeks, another executive of the Fox companies, that they wanted 50 more Grandeur cameras. By other evidence it was shown that appellant commenced work on these cameras almost immediately after the order was received, and that a number of the cameras were completed and practically all were ready to be assembled when the present controversy arose. In addition to this testimony, appellant offered letters and telegrams which later passed between it and the Fox companies concerning this order.

■ There can be no question from the evidence before the trial court at the time the motion for a nonsuit was made that the respondent by the action of Mr. Fox, its president, and Mr. Sheehan, its executive vice-president and general manager, had ordered 50 cameras from the appellant through its usual purchasing channels and that appellant had received the order in the same way and through the same persons with whom it had dealt in previous transactions, and had in good faith done a great deal of work on the cameras. At least the evidence on this point is substantial and would support a judgment in favor of the plaintiff.

■ But respondent contends that even if it be conceded that a contract was made as claimed by appellant, it cannot recover thereon because such contract falls within the purview of the statute of frauds. Section 1624 of the Civil Code as it existed prior to 1931 provided that an agreement for the sale of goods for more than $200 was invalid unless the same or some note or memorandum thereof was in writing, and subscribed by the party to be charged or by his agent. Section 1973 of the Code of Civil Procedure provided that evidence of such an agreement could not be received without the writing or secondary evidence of its contents. However, an agreement to manufacture a thing, from materials furnished by the manufacturer, or by another

person, was expressly excepted from these provisions. (Sec. 1740, Civ. Code.) ▉ If, therefore, respondent ordered from the appellant 50 cameras to be specially manufactured by it, then such contract was excepted from the provisions of the statute as it then existed. Appellant insists that the evidence shows a contract for cameras to be manufactured by it according to directions, plans, and specifications furnished by defendant, that these were not such as appellant made in the ordinary course of its business or for the general market, and in fact they were unsuitable for sale in the open market.

In support of this position, appellant points to the evidence showing instructions it received from time to time after the order was given to change the manufacturing specifications in certain particulars. The record shows that shortly after the conversation of October 26, 1929, at which Mr. Sponable told Mr. Mitchell and Mr. Boeger, officers of the appellant, to commence the manufacture of 50 wide film cameras, Mr. Sponable gave written instructions to change the negative picture aperture in certain particulars. These instructions were followed by drawings sent from the engineering department of the Fox Case Corporation. Later respondent sent a drawing of changes and additions to the camera specifications which were to supersede the drawings which had been previously sent. In January, 1930, some three months after the claimed order was given, the executive manager of the Fox studios asked appellant by letter if it was making all the new cameras with the new dimension aperture. This was verified by appellant.

It was about this time that Fox-Hearst Corporation succeeded Fox Case Corporation, and the former wrote to appellant inquiring if it had any outstanding commitments for Fox Case Corporation. Appellant replied that it had certain orders, including ''a verbal order from your Mr. E. I. Sponable for fifty Grandeur cameras and accessories which are now in production''.

All this evidence tends to support appellant's construction of the contract. It is of a substantial character, and coupled with the evidence which was presented concerning the cost of the work which had been done, it would support a judgment in favor of appellant under the rules stated in *Flynn* v. *Dougherty,* 91 Cal. 669 [27 Pac. 1080, 14 L. R. A.

230], and *Golden Eagle Milling Co. v. Old Homestead Bakery*, 59 Cal. App. 541 [211 Pac. 56].

It is true that there is other evidence which tends to prove that appellant prior to October, 1929, had decided to manufacture wide film cameras for the general trade. This and other evidence tending to show that it commenced the manufacture of the 50 cameras for this purpose only created a conflict which it was the duty of the trial court to resolve in favor of either the appellant or the respondent by appropriate findings of fact which would provide the basis for a judgment on the merits. The evidence which has been referred to is only a small portion of the voluminous record of the case before the court at the time the motion for a nonsuit was made, but it illustrates the situation. With ample evidence which would have sustained a judgment for the appellant in the event that the trial court resolved the conflicts in its favor, the nonsuit should not have been granted. The parties were entitled to a judgment upon the merits.

These conclusions make it unnecessary to consider the many other points raised by the appellant.

The judgment is reversed.

Thompson, J., Curtis, J., Langdon, J., Waste, C. J., Shenk, J., and Seawell J., concurred.