## MORRIS v. THOMAS et al.
### No. 17083.

Court of Appeal of Louisiana. Orleans.
April 24, 1939.

Rehearing Denied May 22, 1939.
Writ of Certiorari Denied June 26, 1939.

Leslie P. Beard, of New Orleans, for appellant.

Lazarus, Weil & Lazarus, of New Orleans (Herman S. Lindy, of New Orleans, of counsel), for appellee.

McCALEB, Judge.

On May 13, 1935, at about 3:30 p. m., an automobile driven by the plaintiff, Clarence Morris, and a truck owned by J. D. Cathey, which was being operated by his employee, Sherman Thomas, collided at the intersection of Felicity and Freret Streets in the City of New Orleans and, as a consequence, the plaintiff received personal injuries. He brought this suit against Cathey and Thomas to recover damages, alleging that the accident was caused solely through the fault and negligence of Thomas; that the latter was in the employ of Cathey when the collision occurred and that he was engaged in the performance of duties within the scope of his employment.

In due course, the defendants answered and denied any liability in the premises on the following grounds; (1) That Thomas, the driver of the truck, was without fault and (2) that, if it should be found that he was guilty of negligence, then plaintiff was chargeable with such contributory negligence as to bar his recovery. The defendant Cathey further resisted responsibility to the plaintiff, contending that Thomas, his employee, was not engaged in the performance of his duties at the time of the mishap.

The case proceeded to trial on these issues and the district judge, after hearing the evidence, gave judgment in favor of the plaintiff and against the defendants in solido for the sum of $364. The defendant Cathey has appealed from the adverse decision. The plaintiff has answered and requests an increase in the award granted to him in the court below.

Cathey claims that the trial court was in error in holding him responsible (1) because his employee Thomas was without fault in the premises; (2) because the plaintiff was guilty of contributory negligence and (3) because Thomas was not acting within the scope of his employment.

We shall first discuss the plea that Thomas was not acting within the scope of his employment. The facts of the case, with respect to this contention, are as follows:

Cathey is an authorized Chevrolet dealer doing business in the City of New Orleans. In the pursuit of his occupation, he employs a number of persons and maintains a garage where the automobiles sold by him are serviced and repaired. The Manager of his Service Department is Harold L. Landry. Gillis Melancon is employed as Sales Manager. Sherman Thomas, the driver of the truck involved in the accident, is employed as a porter and it is also his duty to drive trucks and other vehicles belonging to Cathey when instructed to do so by Landry, the Service Manager.

On the day of the accident, Landry directed Thomas to drive the truck involved in the collision to Cathey's warehouse, which is situated on Julia Street and the New Basin Canal. He was also instructed that, when he got to the warehouse, he was to pick up a package of shrimp which belonged to Melancon, the Sales Manager, and deliver the shrimp to Melancon's home which is located on South Johnson Street near Napoleon Avenue. In conformity with Landry's command, Thomas drove the truck to the warehouse and received the package of shrimp. He left the warehouse and drove up Rampart Street to Melpomene Street and from there to Freret Street, it being his intention to deliver the shrimp to Melancon's home in accordance with Landry's orders. When he arrived at the intersection of Freret and Felicity Streets, the accident occurred.

Mr. Cathey testified that he was without knowledge of the fact that Landry had instructed Thomas to use the truck for the purpose of delivering the shrimp to Melancon's home and that Landry was without authority to direct subordinate employees to use his vehicles for any purpose other than for the business in which he was engaged. Landry states that his authority with respect to the use of the vehicles owned by Cathey was limited to business purposes but that, notwithstanding, he directed Thomas to deliver the shrimp to Melancon's home at the request of Melancon and for the latter's accommodation. Thomas declares that he carried out Landry's instructions because he felt it was his duty to obey all orders given to him by the Service Manager.

The question therefore is whether, under the facts above set forth, Thomas was acting within the scope of his employment and in furtherance of Cathey's business in making the delivery of Shrimp to Melan-

con's residence at the request of Landry. Counsel for plaintiff contend that, since it is not disputed that Thomas was under the supervision, direction and control of Landry, the Service Manager, and was compelled to obey the latter's command, he was clearly acting within the scope of his duties even though Landry did not have the implied or express authority to send him upon personal missions for the accommodation of other employees of Mr. Cathey.

We think that the argument is untenable. Mr. Cathey was engaged in the sale and servicing of Chevrolet automobiles. His employees were authorized to do any and all things necessary to carry out the objects and purposes of that business. There was no reason for him to permit his employees to use the vehicles owned by him for any other purpose and when Melancon requested Landry to have Thomas deliver the package of shrimp to his home, he was asking for the performance of a personal service to him which had no relation whatever to his employer's occupation. It is certain that, had Melancon himself used the truck for that purpose, Mr. Cathey would not be responsible to third persons receiving injuries as a consequence of such an unauthorized use. By the same token, Landry did not have the authority, either express or implied, to permit the truck to be used for the private affairs of Melancon. Can it be said, therefore, that the position of Mr. Cathey is more onerous because Melancon or Landry, instead of using the truck themselves, directed another employee (Thomas), over whom they had supervision, to execute the unlicensed mission?

In Calamia v. Myers et al., La.App., 169 So. 900, 901, one Bearard was employed as a porter for the National Hosiery Mills, a commercial co-partnership composed of William, Isadore and Earhardt Myers. He was directed by one of the co-partners to repair to the home of the co-partners' mother and bring her to the office of the National Hosiery Mills so that she might have lunch with her sons. In obedience to this order, Bearard fetched Mrs. Myers at her home and, while driving her to the hosiery mill in his own car, negligently ran into the plaintiff's automobile. Plaintiff thereafter brought suit against the National Hosiery Mills and the three Myers individually in their capacity as members of the co-partnership. The trial court dis-

missed the plaintiff's suit and in affirming the judgment on appeal, we said:

"Upon the foregoing evidence, it suffices to say that Bearard, at the time of the accident, was not an employee of the National Hosiery Mills acting within the scope of his employment and in furtherance of their business. Blake v. Jefferson-St. Charles Transfer Co., et al., 8 La.App. 310; McDade v. Fulbright, 8 La.App. 529. Whatever may be the plaintiff's right to recover against the Myers brothers individually, or their mother, cannot be considered by us in this case for the reason, as above stated, that the allegation is that Bearard was an employee of the National Hosiery Mills performing services for that concern within the course of his employment by it, and counsel for defendants has limited the question presented to that very issue by timely objection made in the lower court."

There, as here, the servant was in the defendants' employ. But the mission upon which he had been sent had nothing to do with the partnership's business. Likewise, in the case at bar, Mr. Cathey was not concerned with the delivery of shrimp to his employee's residence.

In James v. J. S. Williams & Son, Inc., 177 La. 1033, 150 So. 9, 10, the defendant was the owner and operator of an undertaking establishment. One of its employees named Rhodes used the defendant's funeral car for the purpose of taking another employee named Jemison to his home. On his way back to defendant's establishment for the purpose of returning the funeral car, he ran over the plaintiff and injured her. Our Supreme Court, in holding that Rhodes was acting outside of the scope of his employment, observed:

"Rhodes was employed to drive the vehicle only when used in connection with defendant's business, and as directed by his employer. Defendant was not obligated to transport any of its employees to their homes from its place of business after their work for the day was done, nor to bring them back, and it was therefore no part of Rhodes' duty as employee to do so. Rhodes took the car and drove it on this occasion without the knowledge or consent, either express or implied, of his employer. When he took the car to carry Jemison home, he was clearly on a mission of his own connected in no way with his employment."

In the above cited case, the court goes on to point out that, even though Rhodes was returning the car to his employer's establishment, the recognized doctrine, respecting the re-entry into the scope of the employment by a servant who has previously deviated, could not be applied, because the original taking of the vehicle by the servant was unlawful. Compare Mancuso v. Hurwitz-Mintz Furniture Co., La. App., 181 So. 814, where the James case is discussed and distinguished.

The view we entertain in this matter also finds support in the jurisprudence of other states. In Johnson v. Holmen Canning Co., 191 Wis. 457, 211 N.W. 157, 158, the Supreme Court of Wisconsin was confronted with a state of facts practically identical with those appearing in the case at bar. There, the truck driver for a canning factory was directed by the Manager of the company to make a special trip with the company's truck for the purpose of delivering a birthday cake from the manager's home to the railroad station. While the truck driver was on his way to the station, an accident occurred as the result of which the plaintiff sustained injuries. The court, in exonerating the defendant from liability, stated:

"In the instant case Chatham (the defendant's manager) represented the master, and as managing agent he had authority to do any act on its behalf which was usual and necessary and in the ordinary course of the company's business. 14a Corp.Jur. 359. The business of the corporation was the operation and management of a canning factory, and as to this work Chatham represented the corporation and spoke for it. But as to matters wholly outside the corporation's business, he could not bind the corporation. There is nothing in the evidence to indicate that the corporation had any concern or was in any wise interested in delivering a birthday cake from Chatham's home to his daughter in Chicago, and the presumption is to the contrary. That was a private matter of Chatham's, and the evidence does not show that he had any right to direct Hanson (the servant) to make delivery of the cake with appellant's truck. As to that matter, he represented himself and not the company." (Words in parentheses ours.)

In Carter Truck Line v. Gibson, 195 Ark. 994, 115 S.W.2d 270, it appeared that the truck driver, acting in obedience to

orders of an employee of the truck owner, who had full authority to give the truck driver orders, drove the truck to an outlying district to procure two bottles of gin for such employee and negligently collided with a buggy, killing one of the occupants. The court held that the defendant truck line was not responsible forasmuch as, although the employee had full authority to give orders to the truck driver, that agency, insofar as the defendant was concerned, would be deemed to be limited to transactions connected with the defendant's business.

In Clark v. Buckmobile Co., 107 App. Div. 120, 94 N.Y.S. 771, the General Manager of an automobile company took a day off from work and went to a neighboring city on his own business. On his return, he telephoned an employee of the concern to come to the station for him with the automobile belonging to the company. The employee met him and on the way home from the station negligently injured the plaintiff. It was held that the company was not liable as the negligent employee was not engaged in its business at the time of the accident.

In Stegman v. Sturtevant & Haley Beef & Supply Co., 243 Mass. 269, 137 N.E. 363, a salesman employed by a corporation and furnished with an automobile by it for use in soliciting and calling on customers, was held to be acting outside of the scope of his employment where he transported a carpenter to the residence of the corporation's President and General Manager for the benefit of the President and by the latter's direction even though he intended afterwards to take the President from his residence to the corporation's place of business.

Notwithstanding the force of the foregoing authorities, counsel for plaintiff insist that, because Thomas was subject to the command of Landry, the Service Manager, he was acting within the scope of his employment even though he was engaged upon a mission entirely disconnected with Mr. Cathey's business. In support of this argument, they rely heavily upon two cases, namely, Chamberlain v. Southern California Edison Co., 167 Cal. 500, 140 P. 25, and Irwin v. Waterloo Taxi-Cab Co., Ltd., 3 K.B. 588.

In the first cited case, it appeared that one Lighthipe, an employee of the defendant company, owned an automobile which needed repairing and the defendant's General Storekeeper directed the driver of one of its trucks, used in distributing supplies, to go to Lighthipe's residence with the truck and bring his automobile to defendant's shop for repairs. The driver, while engaged upon this errand, negligently injured the plaintiff. It was further shown that the driver was under the storekeeper's direction and was also subject to orders of the President, Manager and Assistant General Manager of the defendant company. After Lighthipe's automobile was repaired at the defendant's shop, a bill was rendered to him by the defendant for the actual cost of the labor and material used and this bill was paid by him. The court held that, under the circumstances there presented, the truck driver was acting within the scope of his employment and that the defendant was liable for plaintiff's injuries.

It will be seen from the statement of the facts of the cited case that the matter is distinguishable from the instant one on the ground that, there, it appeared that the defendant company was in the habit of permitting its employees to use the facilities of its repair shop for the purpose of having their personal property serviced and that the mission on which the truck driver was engaged at the time of the accident was one which might be said to have been incidental to the defendant's business. Hence the authority is without application.

The other case relied upon by counsel for plaintiff, which was decided by a British court, is in direct conflict with the authorities from the American courts which we have above discussed. The defendants in that matter were the proprietors of taxicabs which they let out on hire. One Bird was in the defendants' employ as a taxicab driver and he was under the direct supervision and control of one Black, their General Manager. In pursuance to the orders of Black, Bird drove him in one of the defendants' taxicabs for the purpose of visiting his personal friends and not upon a mission connected with the defendants' business. Black admittedly had no authority from the defendants to use any of their cabs for such a pursuit. Bird, on the other hand, had no reason to suppose that Black was acting improperly in ordering him to drive him in the taxicab on the occasion in question. While Bird was thus driving Black, the plaintiff was in-

jured as a result of Bird's negligence. Under this state of facts, the court held that, since Bird was subject to Black's orders and since he had no reason to believe that Black did not have the authority to command him to engage in the mission, he was acting within the scope of his employment and that the defendants were responsible in damages to the plaintiff.

As we have above stated, the cited case is in discord with the vast weight of authority. Aside from this, we are unable to coincide with the reasoning adopted by the court in arriving at its conclusion. The judges (all of whom wrote separate opinions) conceded that, if Black, the Manager of the defendant company, had been driving the taxicab himself for his own personal business, the defendants would not be liable. Defendants' responsibility was based upon the theory that because Black used Bird, who had to obey his orders, for the purpose of carrying out his unauthorized mission, the defendants could not be heard to say that Bird was not acting within the scope of his employment. In short, the decision is obviously founded upon the doctrine of estoppel. Albeit, we do not see the logic of the conclusion reached. Why should the burden of the master, with respect to his liability for the acts of his servants, be any greater merely because the unauthorized agent uses a subordinate servant as his alter ego for the purpose of accomplishing the personal mission instead of performing it himself? In either event, the use of the vehicle is without relation to the master's business and outside of the scope of the duties for which the agent is employed.

In the case at bar, it is certain that Cathey would not have been responsible for Melancon's use of the truck for the purpose of delivering shrimp to his home. Why then should Cathey be liable because Melancon told Landry to instruct Thomas to execute the unlicensed mission? Thomas was nothing more than a means employed by Melancon and Landry for the accomplishment of Melancon's personal business.

We are convinced that, since the use to which Cathey's truck was being put at the time of the accident was absolutely disconnected with the enterprise in which he was engaged, he is not responsible for the injuries received by plaintiff as a result of the accident. Because of this, it is not necessary for us to discuss the other contentions involved in the case with respect to the alleged negligence of Thomas and the contributory negligence of the plaintiff.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that plaintiff's suit be and it is dismissed at his cost as to the defendant James D. Cathey.

Reversed.