[Civ. No. 15476.   Second Dist., Div. Three.   May 20, 1947.]

E. J. HILL, Appellant, v. THE PROGRESS COMPANY
(a Partnership) et al., Respondents.

Grant E. Syphers for Appellant.

Richard A. Terrell and R. G. Akers for Respondents.

KINCAID, J. pro tem.—Appeal is taken by plaintiff from a judgment of nonsuit granted upon conclusion of plaintiff's case at the trial. The complaint herein alleges, and it is admitted by failure to deny, that the defendants Marc D. Leh and David E. Brown are partners doing business as The Progress Company, a copartnership, and that the defendant Joseph F. Toland was employed by such defendants as the company superintendent. It is also alleged that the defendant Harry L. Berry is a motor truck operator, conducting his business under a written contract with the company. The Progress Company had contracted with the Quartermaster Corps of the United States Army for the performance of certain services incidental to which the hauling of oil drums was required. Plaintiff alleges that he entered into an oral contract with defendants Leh, Brown and The Progress Company whereby he was granted the exclusive right to do all

of such hauling, which contract was breached by these defendants at a time when they were still in need of trucking services pursuant to the aforesaid agreement with the United States Army. Plaintiff's cause of action is twofold in character, in that plaintiff seeks damages for breach of his hauling contract as against the claimed contracting defendants, but as to defendants Toland and Berry damages are sought on the theory that they wrongfully induced and caused the breach of such contract.

A nonsuit having been granted, we are immediately presented on this appeal with the question as to whether evidence has been presented by plaintiff which, notwithstanding any conflict, would support a judgment in his favor. The evidence must be considered most strongly against the defendants.

" 'Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiff. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If contradictory evidence has been given it must be discarded. . . . The plaintiff must be given the benefit of every piece of evidence which tends to sustain his averments and such evidence must be weighed in a light most favorable to plaintiff's claim.' " (*Mitchell Camera Corp.* v. *Fox Film Corp.* (1937), 8 Cal.2d 192, 197 [64 P.2d 946].) Measured by these rules the evidence presented by plaintiff shows the following facts: In the latter part of October, 1943, Toland asked plaintiff if he would be interested in hauling drums or barrels for The Prógress Company. Plaintiff replied that he would if he could have all of the hauling. Toland promised to take up the matter with Leh. A few days later Toland informed plaintiff that Leh said he could have the exclusive contract for hauling the drums, if he could furnish the trucks for the job, at the rate of 10 cents per drum for hauling them from the railroad siding across the street from The Progress Company plant into the company yard. Plaintiff replied that he would take the job if he could have all of the company's hauling and that he would furnish the necessary trucks. This was agreed to with the further understanding the rate per drum to be paid for other hauling should be later fixed, depending upon the length of the haul. Under the agree-

ment made with the company, through the defendant Toland, its superintendent, plaintiff commenced work at the company yard on November 9, 1943, and spent three days in preparing the ground for the storing of drums. On November 12, 1943, plaintiff started hauling drums in his trucks from the railroad siding across the road into the company yard. On this day defendant Leh told plaintiff that he was recommended very highly to him by his superintendent, Mr. Toland, and he understood that plaintiff wanted all of the company's hauling. Plaintiff replied in the affirmative and that he wanted a written contract to cover the terms of their agreement. According to plaintiff, Leh replied: "[A]s soon as they got going good they would give me a written contract, but for me not to worry, as long as I could furnish them trucks for the job I could have the contract as long as they had it. The Army could cancel their contract at any time, but as long as they had it I would have it, and I promised I would do the work, and could get all the trucks needed for the job." Also, on November 12, 1943, plaintiff had a conversation in the company yard with the defendant, David E. Brown, as follows: "Mr. Brown asked me, he said he understood I had the trucks to do the hauling on the job, and I said, 'Yes,' 'Well,' he says, 'as long as you got the trucks to do the hauling here, and can get the trucks, you can have the hauling as long as we have it,' and I promised that I would fulfill the job and furnish men to haul the drums." On November 14, 1943, in the company yard, plaintiff had another conversation with Leh, as follows: "Mr. Leh was telling me that he wanted some beds built different and longer than the ones that was on the truck to handle the barrels, and I asked him what kind, and he was describing them to me, so I called my men and my wife over to listen to how the trucks was to be built, because I wanted them to help build the beds, and they come over and Mr. Leh told them how he wanted to build the beds, the way he would suggest, and I told him it would be quite a bit of expense. He says, 'Don't worry about the expense,' he says, 'as long as you have got this job,' he says, 'you have got the contract 'to do all the hauling.' He said, 'charge the lumber to the Progress Company and the Progress Company will hold it out of your pay,' which I did get some lumber that way, and I asked him then, I says, 'Well, you are sure that I will have all the hauling?' 'Yes,' he says, 'all the hauling will have to come through you, don't worry about it.'

So I had these people help me build the beds.'' Plaintiff continued to haul drums pursuant to his contract with defendants Leh, Brown and The Progress Company, until June 17, 1944. During this period he was paid for the hauling at the following rates: At the beginning of the job 10 cents per empty drum from the siding to the yard, but this was later lowered to 8 cents; 16 cents per empty drum from Los Angeles harbor to the company yard, and 20 cents per full drum from the rail siding to the yard. Plaintiff owned four trucks, capable of hauling 656 drums at one time, these trucks being kept at the defendant company yard at all times excepting when taken out for repairs. Immediately prior to the termination of his contract by defendants, appellant purchased a fifth truck. In addition to his own trucks plaintiff made arrangements to rent trucks from other owners whereby he would secure from 10 to 15 trucks on a day's notice any time he needed them. Leh testified that, with few exceptions, the hauling done by plaintiff was satisfactory to the defendant company.

Over plaintiff's protests and objections, various other truckers were employed by The Progress Company to haul oil drums pursuant to the Army contract during the period when plaintiff, under his contract, had the exclusive right to do such hauling. Plaintiff protested to Leh, who said he would see about it and would straighten things out, but nothing was done. Several additional truckers were employed with plaintiff's consent.

Shortly after plaintiff began hauling under his contract, Toland asked plaintiff to pay him a ''cent a barrel kick back,'' which appellant refused to pay. Toland repeated this request upon various occasions, the last being about a week before plaintiff was ordered off the job. About March, 1944, Toland put the defendant Berry to work hauling drums for the defendant company, at which time plaintiff protested to Berry and told him that he had a contract with the company for all the hauling and that all new trucking which was hired was supposed to come through him. Berry continued to do hauling for the defendant company subsequent to the termination of plaintiff's contract, telling plaintiff that he then had the hauling contract and that plaintiff could work for him with his five trucks if he would pay him 15 per cent. Berry showed plaintiff his written contract for such hauling with defendant company.

On June 17, 1944, Toland asked for appellant's pass into the company yard, tore it up and ordered appellant to get his trucks off the property, refusing to give any explanation. Leh testified that, through his superintendent Toland, he ordered plaintiff off the property and that his pass be picked up. This evidence, viewed in the light of the above set forth rules relating to nonsuit, sufficiently establishes the creation and existence of a contract between plaintiff and defendants Leh, Brown and The Progress Company, whereby plaintiff was to have the exclusive right to haul all oil drums which were to be hauled under the contract between such defendants and the Quartermaster Corps of the United States Army, so long as the latter contract was in existence, at the agreed rates, provided plaintiff would furnish all trucks necessary to perform such services. It further shows that plaintiff performed the services required of him by the agreement, furnished or was prepared to furnish all trucks necessary under its terms, and that defendants Leh, Brown and The Progress Company, wilfully and without just cause breached and terminated it.

As to plaintiff's damages, his books were admitted in evidence by which plaintiff contends a profit is shown from his hauling, performed under the contract with defendants, in the net sum of $9,540.22 which represents 56 per cent of his gross income from such source. The evidence further shows that between November 12, 1943, and December 1, 1945, The Progress Company paid out the sum of $514,682.35 to truckers for hauling and loading of drums pursuant to its contract with the United States Army and the laying down of tracks and piling of drums. Applying the same percentage, "56%," of net profit to this figure, plaintiff claims he would have made $288,222.11, which he contends to be the damages due him for the breach of his exclusive contract to perform all of the hauling in question.

Defendants argue that this evidence with reference to plaintiff's damages is insufficient for the reason that any award of damages thereunder would be based wholly on speculation and conjecture and would be violative of section 3301, Civil Code, in that they are not clearly ascertainable in either nature or origin. While proper consideration should be given by the trial judge, by way of diminishment of damages, to the evidence showing plaintiff to have consented, either expressly or impliedly, to the hiring of certain of the

additional truckers, and to his testimony to the effect that he wanted no profits of other haulers on the job, nevertheless we are unable to agree with defendants that damages under the evidence as presented are clearly unascertainable or must necessarily be speculated or conjectured. The measure of his general damages would not only be those provided for in section 3300, Civil Code, but "[I]f the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties." (Civ. Code, § 1512; 8 Cal.Jur. 820, par. 77.)

Defendants further contend that, if plaintiff did have the exclusive hauling contract claimed by him, in failing to protect his interests by calling upon the other subsequently employed haulers for a share of their profits, he necessarily indicated his abandonment of his exclusive right to do all defendants' hauling. The evidence as to this subject, while giving much basis for defendants' argument, when measured by the rules relating to nonsuits whereby plaintiff must be given every favorable inference and presumption and the benefit of every piece of evidence tending to sustain his averments, does not necessarily show such an abandonment.

Defendants urge as a further point justifying the nonsuit the illegality of the hauling contract. This contention is based upon the fact that a permit as a "highway contract carrier" had not been issued to plaintiff by the California Railroad Commission prior to or during the time of the hauling in question. The evidence shows that, more than a year prior to commencement of work for defendants plaintiff applied for and was issued by such commission a "radial highway common carrier" permit which was valid and in good standing at all times thereafter. He testified that, in addition to holding this permit, he advised the representative at the California Railroad Commission office at Long Beach, California, of his contract for truck hauling with defendants and was told by him to go ahead and operate and a highway contract carrier permit would be issued to him later. This permit was issued to him on October 19, 1944.

Defendants strongly rely upon the cases of *Roddy* v. *Hill Packing Co.*, 156 Kan. 706 [137 P.2d 215], and *Rainer* v. *Western Union Tel. Co.*, (Mo.App.) 91 S.W.2d 202, as authority for their position that plaintiff cannot here recover because of his failure to possess the requisite license. These

cases may be distinguished, however, in that the truckers there involved had no permit to act as public carriers of property over the state highways. The plaintiff herein was licensed by the proper state commission as that type of carrier which assumes the most responsibility to the public, a common carrier.

The transportation of property over highways of this state is regulated, so far as the situation before us is concerned, by the Highway Carriers Act (Stats. 1935, p. 878; Am.Stats. 1937, p. 2006; Deering's Gen. Laws, 1937, Act 5129a, vol. 1, p. 2145). The terms "highway common carrier," "radial highway common carrier" and "highway contract carrier" are there defined, but these definitions constitute the only reference to the latter two in the act. In all other portions of the act both types of carriers are referred to as "highway carriers." There is no distinction in requirements for obtaining permits, or in the applicability of other parts of the act to them.

A leading case before the California Railroad Commission showing the distinction between these classes of carrier is *Pete Rampone et al. v. P. J. Leonardini et al.* (1936), 39 C.R.C. 562. The commission there, after quoting the statutory definition of each class of carrier, proceeded to distinguish them by showing, in part, that a "highway common carrier" holds out his transportation services to the public for the purpose of transporting certain varieties of freight, at approved rates, between fixed termini or over a regular route. A "radial highway common carrier" is generally the same as a "highway common carrier" excepting that he does not usually operate between fixed termini or over a regular route, but serves anyone within a clearly defined dedicated area. A "highway contract carrier" is one who does not dedicate and hold out his transportation services generally to the public, or a substantial portion thereof, but is employed by a selected and limited group of shippers, as a private carrier for an agreed compensation, to the exclusion of all others, by a mutually binding contract, entered into and performed in good faith, for an agreed term, and which contract mutually binds the carrier to transport and the shipper to supply a specific category of freight.

The opinion then goes on to say: "In determining whether such a carrier is in fact a 'highway contract carrier,' it is of controlling importance to determine by his conduct, in the matter of soliciting and procuring the contract or contracts,

that he has not made available his services generally to the public, or a substantial portion thereof. Does such conduct display a willingness to serve generally the public, or a substantial portion thereof? If so, the carrier is not a 'highway contract carrier' but is a common carrier. Such carrier's conduct constitutes evidence of controlling importance. It is from this evidence of conduct as presented in each case, that the Commission may determine his true status.

"It is also important, in determining whether such a carrier is in fact a 'highway contract carrier,' to scrutinize the scope and conduct of his shipper in the matter of how the shipper determines and distributes his freight movements. Such shipper crosses the boundary of private carriage and enters the field of common carriage if he diverts, in violation and disregard of the terms of the contract, with the acquiescence and sufferance of the carrier, the identical quantum and category of freight which constitutes the subject of private contract to a promiscuous group of carriers, promiscuously and competitively soliciting and bidding for the same. Plainly, a shipper cannot preserve the true status of 'highway contract carriage' if he hazards, in violation and disregard of the terms of the contract, and with the acquiescence and sufferance of the carrier, any public bidding or competition that may result in diverting from such a 'highway contract carrier' any of the specific freight that comprises the specific object of his contract. Correspondingly, such shipper's conduct constitutes evidence of importance, and it is also from this evidence of conduct, as presented in each case, that the Commission may determine the carrier's true status."

The shipper defendants herein are hardly in a position to challenge the right of plaintiff to enforce his claimed contract upon the ground that he is a "highway contract carrier" without the requisite permit, when they not only expressly deny the existence of any contract that could be the basis of this class of carrier but by their own conduct in hiring numerous other truckers to haul the merchandise claimed to be covered by the private contract have violated and disregarded its terms, with the acquiescence and sufferance of the carrier, and under the construction of the act above quoted, thereby conceded that plaintiff was not a contract highway carrier. Under these conditions we are unable to agree that plaintiff is prevented from maintaining his action because of any illegality of his contract.

■ While the evidence, considered in the light of the rules relating to nonsuit, would support a judgment in plaintiff's favor as against the defendants Leh, Brown and The Progress Company, a different situation exists so far as the defendants Toland and Berry are concerned. In seeking to hold these latter defendants liable for damages plaintiff must establish, by the evidence, that the contract which otherwise would have been performed, was breached and abandoned by reason of their wrongful act and that such act was the moving cause thereof. Unless the act complained of is the proximate cause of the injury there is no liability. (62 C.J. 1115, § 30; 84 A.L.R. 51; 15 R.C.L. 63.) See *Johnson* v. *Union Fur. Co.* (1939), 31 Cal.App.2d 234, 237 [87 P.2d 917]. ■ The fact that Toland employed and discharged plaintiff in his capacity as superintendent of defendant company pursuant to express instructions of his employers carries no personal responsibility for breach of any contract between plaintiff and such employers. ■ To show additionally that Toland made requests for a "kickback" and that plaintiff refused to pay it, represents at most a suspicious circumstance denoting a measure of reprehensible conduct, but falls far short of proving any causal relationship between such request and the breach of plaintiff's hauling contract with such defendant's employers. ■ Likewise, to merely show that Berry continued to haul drums under an arrangement with the company after plaintiff told him he had a contract for all the hauling fails to prove this act to have caused the employers to have breached their contract with plaintiff. Such breach, if any occurred, took place with the hiring of Berry or other truckers and not by, or at the time of, the subsequent conversation complained of.

The judgment is reversed as against the defendants Marc D. Leh and David E. Brown, both individually and as partners doing business as The Progress Company, but is affirmed as to defendants Joseph F. Toland and Harry L. Berry.

Shinn, Acting P. J., and Wood, J., concurred.