[Civ. No. 8102. Third Dist. June 4, 1952.]

RICHARD W. KROUPA, Appellant, v. OAK PARK THEATRE COMPANY, INC. (a Corporation), et al., Respondents.

Goldstein, Lewis & Barceloux for Appellant.

Gerald M. Desmond for Respondents.

VAN DYKE, J.—Respondents operated a motion picture theater in Sacramento. The general manager for that theater was Kay J. Naify and the assistant manager was Nick Yiamkis. While he bore the title of assistant manager, he was described in the testimony as being a general handyman. He testified he did everything in general, was the floor manager and maintenance man. His immediate superior was Naify. The manager lived in an apartment above the theater; he owned a car, which was occasionally used in running errands connected with the operation of the theater and for that use the respondents paid him a weekly sum. Yiamkis was supposed to work eight or nine hours a day, but he went to work as early as 11 a. m. and had to be on hand between 11:30 and 12 p. m. when the theater closed for the day. He could take compensating time off in the meantime. Sometimes Naify sent Yiamkis on theater errands in Naify's car. Naify had been

employed 12 years and had risen to the position of manager which he had held for about five years. He described his duties as having to see that a show was given, that films were supplied, that the house was properly maintained, that advertising and publicity campaigns were conducted, in effect to see "that the theater had merchandise to sell in the form of sound and seats." It was his job to see that all was in order, that help was courteous, that patrons were satisfied and generally to promote the business. He stated he was in charge of the entire operation of the theater. Under his management and control were 13 or 14 other employees whom it was his duty to supervise. He had personally hired Yiamkis. Naify's own hours of employment varied. If he worked late he began late the next day. On May 18, 1948, Yiamkis came to work at 11 a. m. and about an hour later Naify tossed to him the keys to Naify's automobile and asked him to take his (Naify's) wife to the home of her friend. Yiamkis took the keys and the car and drove Mrs. Naify to the friend's home and while returning to the theater was involved in an accident in which appellant was injured. At the trial evidence was introduced sufficient to show that the accident was proximately caused by the negligence of Yiamkis in the operation of the Naify car. At the close of appellant's evidence respondents moved for a nonsuit, which was granted. From the judgment entered thereafter this appeal was taken. The sole question presented is whether or not under the evidence, taken in its aspect most favorable to appellant, a verdict in his favor would have been sustained as against respondents. More specifically, were respondents responsible for the tort of Yiamkis?

Appellant, contending that under the foregoing facts he had made out at least a prima facie case for the application of the doctrine of *respondeat superior*, relies in main part upon the case of *Harrison* v. *Taxicab Co., Ltd.*, 3 King's Bench 588, and *Chamberlain* v. *Southern Calif. Edison Co.*, 167 Cal. 500 [140 P. 25]. The facts in the English case were that a taxicab company, which the plaintiff sought to hold liable for injuries incurred by him when one of its taxicabs was negligently operated to his damage, employed a general manager, and, subordinate to him, a taxi driver whose duty it was to obey the orders of the manager. When the accident occurred this driver was driving the cab in which the manager was riding, the purpose of the trip being to carry the manager on a visit to his friends. The general business of the taxi com-

pany was not involved and the manager had no authority to use the company's cabs for such purposes; but the taxi driver had been directed by the manager to drive him to that destination. Responsive to the taxi company's arguments that they were not liable because their manager was guilty of a breach of duty to them in so ordering the taxi driver to transport the manager for his private purposes outside the business of the company, the court replied that the driver was bound to obey the manager's orders, was driving the company car pursuant to such orders and thus acting within the scope of his (the driver's) employment under the orders of his master, the taxi company, at the time he was guilty of negligence. Said the court:

". . . If a master directs a servant to take his orders in respect of matters within his contract of service from A.B., such orders, when given, become the orders of the master. A master can always delegate his authority and he does so when either expressly or impliedly he designates a person as authorized to give orders for him and on his behalf. In the present case the fact that Black was the general manager implied that it was the duty of a servant in the position of Bird to obey the orders given to him in the ordinary matters of his service. His driving the car on this occasion was thus in fulfilment of his duty of obedience to his masters, the defendant company, and therefore he was at the time their servant doing what he was engaged upon by their orders. Nothing more than this is needed to make the principle respondeat superior apply."

In *Chamberlain* v. *Southern Calif. Edison Co., supra,* the facts were that Sterling, a general storekeeper for the corporation defendant who had authority to give orders to a truck driver, one Rosso, for the use of his truck in distributing supplies, ordered the truck driver to tow the automobile of Lighthipe, another employee, to the corporation's repair yard and while this was being done the plaintiff was injured through the negligence of the truck driver. The automobile was thereafter repaired at the company's shop, the cost billed to Lighthipe and paid by him. Said the court, at pages 501-503:

"The sole attack of the appellant is upon that part of the findings which declares that the motor truck was in charge of a servant of the Southern California Edison Company at the time of the infliction of the injuries upon Chamberlain. . . .

"The contention of appellant is that Rosso was not engaged

in his master's business at the time of the infliction of the injuries upon plaintiff but was acting for Lighthipe. It is true that Rosso in the course of his examination said: 'I was in charge of·that machine but I was not exactly doing work for them, I was towing a machine for Lighthipe.' But in almost the next breath he said: 'I got my orders from W. T. Sterling, the general storekeeper of the Southern California Edison Company, the one I was employed under.' Later in his examination Rosso admitted that Lighthipe had never spoken to him about the motorcar. Consequently the court was justified in rejecting Rosso's conclusion that he was working for the owner of the vehicle which was being towed at a time when Rosso was acting under the orders of his superior in the defendant's employ, driving the defendant's motor truck and drawing pay from the defendant as its servant. According to the undisputed facts in the case the defendant was clearly liable. It makes no difference that · Rosso's usual employment was the distribution of supplies. His business was to operate his motor truck under the orders of his superior and that was exactly what he was doing at the moment when his carelessness caused the injury to plaintiff. The defense of *ultra vires* is untenable. If the defendant were a natural person and should order his servant to bring an automobile to his place of business there would be no doubt of his liability for such a tort as this occurring during the time when his command was in process of execution. He could not justly defend upon the theory that he was a banker and not a blacksmith. It would make no difference if he intended to use the automobile, after repairing it, in transporting firearms across the Mexican border. Upon a like principle the defendant corporation may not escape liability for the torts of its servants, acting under its orders, upon the theory that it is not authorized to make repairs upon the instrumentality which caused the damage. To hold otherwise would be to give to an artificial person immunity not enjoyed by a natural one. A corporation acts through its officers and servants. When the plaintiff established the fact that the driver of the motor truck was a servant of the defendant acting under orders of one of its officers who had authority to direct him in his work, a *prima facie* case was established in favor of plaintiff.''

When the foregoing rules are applied to the instant case we think a situation was presented necessitating the submission of factual issues to the jury. Naify had been given

wide general authority by the respondents. He had been placed in a position where he had broad powers to decide what he should direct his subordinates to do in furtherance of respondents' business. If, as the superior of Yiamkis and in the exercise of his managerial powers, he ordered Yiamkis to perform the errand on which Yiamkis was engaged at the time of the injury to appellant, then Yiamikis was acting as a servant of respondents as truly as though his employer had been an individual person and had given him such an order. But whether or not Naify did give an order to Yiamkis was under the facts a matter for the jury to determine. The hours of both Naify and Yiamkis were irregular. The jury could have inferred that Naify, without violating his duties to his employers, could have absented himself from the theater as upon his own free time and, using his own car for his own purposes, could have driven his wife to her destination. The jury could also have inferred that Yiamkis could at the same time have taken time off, and, finally, the jury could have inferred that nothing more was involved than a mere personal request from Naify to Yiamkis that upon such free time he favor Naify by running the errand for him. The foregoing necessitates a reversal of the judgment, for a nonsuit may not be granted if, viewing the evidence in the light most favorable to the plaintiff, there is any substantial evidence, including inferences from evidence, which would support a finding for plaintiff. (*Seckel* v. *Allen,* 67 Cal.App.2d 146, 150 [153 P.2d 394] ; *Mitchell Camera Corp.* v. *Fox Film Corp.,* 8 Cal.2d 192, 197 [64 P.2d 946].)

The judgment is reversed.

Peek, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied June 27, 1952, and respondents' petition for a hearing by the Supreme Court was denied July 31, 1952.